TUG RIVER COAL & SALT CO. v. BRIGEL et al.

(Circuit Court of Appeals, Sixth Circuit. April 11, 1898.)

No. 557.

1. FEDERAL COURTS—JURISDICTION—DIVERSE CITIZENSHIP.
  The citizenship which determines the jurisdiction of a federal court is that which existed at the time of commencement of the suit, and subsequent changes can neither devest nor confer jurisdiction.

2. SAME—PARTIES.
  When jurisdiction vests at the commencement of suit over the indispensable parties, but its exercise is prevented by the presence of other proper parties over which the court cannot take jurisdiction, the names of such other parties may be stricken out, and the objection to the exercise of jurisdiction thereby obviated.

3. SAME—AMENDMENT OF PLEADINGS.
  Where a federal court has jurisdiction over the parties and cause of action at the time suit is brought, the jurisdiction is not affected by subsequent amendments of pleadings relating to the cause of action.

4. MORTGAGE—FORECLOSURE—PARTIES.
  The mortgagor and mortgagee are the only indispensable parties in a suit to foreclose a mortgage.

5. CHANCERY PRACTICE—MASTER—FINDINGS OF FACT—EFFECT.
  In the absence of clear evidence of mistake of fact or error of law, a finding of fact by a master, concurred in by the court below, is binding upon an appellate court.

6. SAME—COSTS.
  Where the final decree in an equity suit has been reversed by the court of appeals for want of the diverse citizenship necessary to the jurisdiction of federal courts, and the bill is subsequently amended so as to obviate that difficulty, and make a case proper for the court to proceed with, the general costs of the cause in the court below should be adjudged by the court on final hearing just as in the ordinary case. 73 Fed. 13, affirmed.

7. EVIDENCE—PAROL TO VARY WRITTEN CONTRACT.
  Evidence that a written contract, absolute on its face, was not intended to take effect except upon a certain condition, does not tend to contradict, add to, or vary the contract, but only to explain it, and is admissible.

Appeal from the Circuit Court of the United States for the District of Kentucky.

Bill was filed in the circuit court to foreclose a mortgage and trust deed, executed by appellant in favor of appellees, as trustees, to secure payment

of certain bonds issued and sold by appellant company, a corporation organized under the laws of Kentucky, and a citizen of that state. Complainant Brigel was a citizen of Ohio, and Murray a citizen of New York. The bill sought a sale of the property covered by the mortgage in bar of the equity of redemption. At the time of filing the original bill, there were creditors of the defendant, some holding claims for taxes paid, and others being judgment creditors with executions levied, and claiming junior liens thereby under the laws of Kentucky. A number of these creditors were made parties to the original bill, and it appeared from the record that the citizenship of one or more of them was of the same state with that of one of the complainants, and the citizenship of others was alleged to be unknown. The case having been brought before this court on appeal, the final decree was reversed for lack of necessary diverse citizenship to support the jurisdiction of the court, as the record then was. 31 U. S. App. 665, 14 C. C. A. 577, and 67 Fed. 625. When the case went back, the circuit court permitted an amendment of the bill, so as to dismiss the bill as to all parties except the appellees and appellant, so as to make the suit one of foreclosure only between the trustees as complainants, and the mortgagor company as defendant. A sale in bar of the equity of redemption was specially prayed for in both original and amended bills. Between the date of filing the original bill and the amendment thus allowed, Murray, one of the trustees, changed his citizenship from New York to Kentucky, and this fact was set up in a plea to the amended bill, raising objection thereby to the jurisdiction of the court. This plea, having been set down for hearing, was overruled by the court, and the defendant answered the amended bill. The case was then heard again upon a master's report as to debts, liens, and priorities, various creditors having intervened by petition. Sale was made under orders of the court, and from the final decree confirming the sale the case is again brought to this court by appeal. The opinion of the court disposing of the plea is published in 73 Fed. 13.

W. G. Hutcheson and Thomas F. Hargis, for appellant.

Walter A. De Camp and Thomas W. Bullitt, for appellees.

Before LURTON, Circuit Judge, and SEVERENS and CLARK, District Judges.

CLARK, District Judge, after stating the case, delivered the opinion of the court.

The question of jurisdiction raised must first be considered and determined. It is well settled that, if the necessary diverse citizenship exists at the time of commencement of the suit, no subsequent change of citizenship, although voluntary, will defeat the jurisdiction which once vested. Morgan's Heirs v. Morgan, 2 Wheat. 290; Mollan v. Torrance, 9 Wheat. 537; Clarke v. Mathewson, 12 Pet. 164; Anderson v. Watt, 138 U. S. 694, 11 Sup. Ct. 449. And where the jurisdiction of the circuit court has fully attached against the tenant in possession in an action of ejectment, substitution of the landlord as defendant will not affect the jurisdiction, although he may be a citizen of the same state with plaintiff. Hardenbergh v. Ray, 151 U. S. 112, 14 Sup. Ct. 305. The primarily interested and indispensable parties to the original bill were the appellees and appellant. There can be no doubt that there was jurisdiction over the bill so far as the trustees as complainants and the mortgagor company as defendant were concerned; and, if all other parties had been omitted. the jurisdiction would have been too clear to admit of question. The presence of the other parties, and the relief sought against them, constituted an impediment to the exer-

cise of the jurisdiction otherwise rightfully attaching. It is well settled now that these subsequent lienholders were not indispensably necessary parties to the original bill. The dismissal as to them enabled the court to retain the jurisdiction which rightly belonged to it, and merely removed an impediment to the exercise of that jurisdiction.

In Conolly v. Taylor, 2 Pet. 556, bill was filed in the circuit court of the United States for the district of Kentucky by aliens and a citizen of Pennsylvania against citizens of Kentucky and a citizen of Ohio, on whom process was served in Ohio. As between the citizen of Pennsylvania and of Ohio, neither of them being a citizen of the state in which the suit was brought, the court could exercise no jurisdiction, though its jurisdiction as between the alien plaintiffs and the defendants could not be questioned. Before the cause was heard, the name of the citizen plaintiff was struck out of the bill, and the question was whether the original defect was cured by this change, and whether the court could proceed to a final decree with the parties then left in the case. The defendant contended by way of argument that, if an alien becomes a citizen pending the suit, jurisdiction is not devested by this circumstance, and so, if one citizen sued another citizen of the same state, jurisdiction could not be given to the court by the citizen who brought the suit removing and becoming a citizen of a different state; and in reply to this contention Mr. Chief Justice Marshall, delivering the judgment of the court, said:

"This is true, but the court does not understand the principle to be applicable to the case at bar." "Where there is no change of party, a jurisdiction depending on the condition of the party is governed by that condition as it was at the commencement of the suit. The court, in the first case, had complete original jurisdiction; in the last it had no jurisdiction, either in form or substance. But, if an alien should sue a citizen, and should omit to state the character of the parties in the bill, though the court could not exercise its jurisdiction while this defect in the bill remained, yet it might, as is every day's practice, be corrected at any time before the hearing, and the court would not hesitate to decree in the cause. So in this case. The substantial parties plaintiffs—those for whose benefit the decree is sought—are aliens, and the court has original jurisdiction between them and all the defendants. But they prevented the exercise of this jurisdiction by uniting with themselves a person between whom and one of the defendants the court cannot take jurisdiction. Strike out his name as a complainant, and the impediment is removed to the exercise of that original jurisdiction which the court possessed between the alien plaintiffs and all the citizen defendants. We can perceive no objection, founded in convenience or in law, to this course."

The principle declared in this case was reaffirmed and applied in Vattier v. Hinde, 7 Pet. 252, in which the bill had been dismissed as to a defendant and the jurisdictional defect cured. In this case Mr. Chief Justice Marshall said:

"It is impossible to draw a distinction, so far as respects jurisdiction, between striking out the name of a plaintiff and of a defendant. The citizen of Ohio may have been a more necessary party in the cause than the citizen of Pennsylvania. Had it been otherwise, the same principle which sustained the one alteration would have sustained the other."

See, also, Carneal v. Banks, 10 Wheat. 181.

Bill was filed in the circuit court for the Southern district of Alabama by citizens of Texas against defendants, all of whom were citizens of Alabama, except two of the defendants, who were also citizens of Texas. Objection was taken in the circuit court to its jurisdiction on account of the residence of these two defendants in the same state with the complainants, and the court, in its final decree, directed the bill to be dismissed as to these two defendants, as not being essential parties to the suit by the complainants. The supreme court of the United States, in disposing of this objection, said:

"The objection to the jurisdiction of the court that two of the defendants were residents of Texas, the same state with the complainants, was met and obviated by the dismissal of the suit as to them. They were not indispensable parties; that is, their interests were not so interwoven and bound up with those of the complainants or other parties that no decree could be made without necessarily affecting them. And it was only the presence of parties thus situated which was essential to the jurisdiction of the court. The rights of the parties, other than the defendants who were citizens of Texas, could be, and were, adequately and fully determined without prejudice to the interests of those defendants. And the question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether to a decree authorized by the case presented they are indispensable parties, for, if their interests are severable, and a decree without prejudice to their rights can be made, the jurisdiction of the court should be retained, and the suit dismissed as to them." Horn v. Lockhart, 17 Wall. 570.

It is very clear, therefore, that the circuit court properly allowed the amendment, and that the amendment, when made, related to the commencement of the suit, for otherwise the amendment would be ineffectual to remove the impediment, and would, as was justly observed by the learned circuit judge, be without meaning. This must be so, for it is well settled in these and other cases that jurisdiction depends upon the state of things at the time the suit is brought.

In Anderson v. Watt, 138 U. S. 707, 11 Sup. Ct. 449, the supreme court, referring to the previous case of Conolly v. Taylor, said:

"This court held that jurisdiction depended upon the state of the parties at the commencement of the suit, which no subsequent change could give or take away; that, if an alien became a citizen pending the suit, the jurisdiction which was once vested would not be devested; and, so, if a citizen sued a citizen of the same state, he could not give jurisdiction by removing and becoming a citizen of a different state; but that, just as the omission to state the character of parties might be corrected at any time before hearing, so by an amendment made by striking out the person whose presence as a complainant prevented the exercise of the jurisdiction, the impediment could be properly removed."

The principle on which the decisions proceed is that, when jurisdiction vests at the commencement of the suit over the indispensable parties to a decree, but the exercise of jurisdiction is prevented by the presence of other proper and material parties, the names of such other parties may be stricken out, and the objection to the exercise of jurisdiction thereby obviated. See Sioux City Terminal R. & W. Co. v. Trust Co. of North America, 27 C. C. A. 73, 82 Fed. 124.

We have said that the mortgagee and mortgagor were the only indispensable parties to a bill simply to foreclose. The proposition was stated in the late case of Davis v. Trust Co., 152 U. S. 594, 14 Sup. Ct. 693, in this language:

"In a decree for the foreclosure of a mortgage the two parties principally and primarily interested are the mortgagee and the mortgagor."

And, as has been observed, neither prior nor subsequent lienholders are necessary parties to such a bill where the relief sought does not go beyond foreclosure against the mortgagor. Wabash, St. L. & P. Ry. Co. v. Central Trust Co. of New York, 23 Fed. 513; Jerome v. McCarter, 94 U. S. 734; Howard v. Railway Co., 101 U. S. 837; 1 Fost. Fed. Prac. § 52; 1 Beach, Mod. Eq. Prac. § 74. And where the court, at the commencement of the suit, has jurisdiction by reason of the citizenship of the parties, this jurisdiction is not, as a rule, affected by amendments relating to the cause of action.

In Green v. Custard, 23 How. 484, suit had been instituted in the state court by Custard, a citizen of Texas, against Green, a citizen of Massachusetts, to recover a balance due on a judgment. The suit was by attachment. The case was, on Green's application, removed into the district court of the United States. After removal, Custard, by amendment, as the court said, "set forth an entirely new cause of action," basing the right to recover on a note. The court thereupon remanded the case upon the ground that the amendment made a case within the proviso to the eleventh section of the original judiciary act, restricting the jurisdiction of the United States courts. On writ of error the judgment was reversed. The principle deducible from this case is that, where the circuit court of the United States has jurisdiction over the parties and cause of action when the suit is brought, the jurisdiction is not affected or defeated by any amendment of the pleadings changing the cause of action. But the contention by the defendant that the amended bill was the commencement of a new suit is entirely untenable. This is already sufficiently apparent from what we have said of this amendment and the character of the suit as left by the amendment. All the features of the suit as an ordinary foreclosure bill remained just the same as when the suit was first instituted, and with the mortgagees and mortgagor as the only parties. The amendment only eliminated from the case parties not necessary to the foreclosure suit with the relief sought against them. And what has been thus said in regard to the amended bill is applicable to the second amendment, by which the defendant Gordon was brought in for the purpose of having his rights settled in this suit. It is clear that Gordon might have been joined with the mortgagor company as a defendant to the original bill, and jurisdiction over the suit as between the trustees as complainants and the appellant and Gordon as defendants would have been entirely clear. The purpose and effect of the amendment bringing in Gordon were to enable the court to give to the purchaser a perfect title, and this amendment was strictly in aid of the proper purpose of the original bill, and to obtain full relief thereunder.

The objection to jurisdiction on account of this amendment cannot be sustained.

We are thus brought to the merits of the case, which do not seem to require extended discussion. A question presented by the assignments of error is whether or not the real ownership of bonds held by Charles E. Brigel was in him or his father, Leo Brigel, one of the trustees in the mortgage. The contention of the appellant in the court below and here was and is that these bonds were bought by, and in fact belonged to, Leo Brigel, the trustee, and that they were purchased in the name of the son fraudulently, and for the purpose of covering up the real ownership thereof. Leo and Charles E. Brigel testify that the bonds belonged to the son, and not to the father, and in this they are supported by other circumstances not necessary to be detailed. The defendant relied mainly on circumstantial evidence to show that in fact the bonds were the property of the father, and not the son. The relationship, lack of sufficient means in the son with which to make the purchase, the part taken by the father in bringing about the purchases and in going the son's security for payment, and other circumstances, are relied on. The case was referred to a special master for the purpose of a full report as to all debts against the company, and also with direction to report the outstanding bonds secured by the mortgage, the amounts of these bonds, and by whom held and owned. The special master reported these bonds as belonging to Charles Brigel, and on exception duly taken the circuit judge concurred with the special master in this finding of fact. Under such circumstances, in the absence of very cogent evidence of a mistake of fact, or of some error of law, this finding of fact by the master, concurred in by the circuit court, must be accepted by this court as final. Belknap v. Trust Co., 47 U. S. App. 663, 26 C. C. A. 30, and 80 Fed. 624; Emil Kiewert Co. v. Juneau, 47 U. S. App. 395, 24 C. C. A. 294, and 78 Fed. 708; Turley v. Turley, 85 Tenn. 251, 1 S. W. 891; Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237; Crawford v. Neal, 144 U. S. 585, 12 Sup. Ct. 759. It is only necessary to say that an examination of this record fails to disclose any such state of proof as would warrant us in disagreeing with the conclusion thus reached by the master and the circuit court. This conclusion that Charles E. Brigel, and not Leo, is the real owner of the bonds, renders it unnecessary for us to consider or determine to what extent and with what rights as between himself and the mortgagor company Leo Brigel might purchase bonds secured by the mortgage because of his trust relation to the mortgagor company.

Another contention by the defendant is that by a certain contract dated September 21, 1891, signed by the appellant company, Leo A. Brigel, and Thomas F. Hargis, the right to foreclose the present mortgage was suspended. The position is that Leo Brigel agreed that out of the proceeds to be collected under suits contemplated by that contract the bonds were to be first satisfied, and that Brigel, having failed and refused to carry out the contract, cannot insist on foreclosure for the satisfaction of the bonds. A complete

answer to this contention is found in the conclusion that Charles E. and not Leo A. Brigel is the owner of the bonds, for, this being so, it was not within the power of Leo Brigel to affect the rights of Charles E. Brigel in respect to these bonds. But, aside from this, we fully agree with the conclusion of the circuit court that the weight of evidence establishes that Leo Brigel signed this contract on the express condition that it was not to take effect, or become binding on him, until submitted to and approved by his attorney, who was not at the time present; and that, when advised by his attorney that the contract was void as against public policy, he promptly gave notice that he would not execute the contract on his part, and that the same was abandoned by the appellant through its president, Barrett. It is insisted that the evidence offered to show that the contract was signed upon this condition was not admissible under the rule, which does not permit a written contract to be contradicted, varied, or added to by parol testimony. One difficulty with this position is the lack of proper objection to the testimony when offered in the court below. The Cayuga, 16 U. S. App. 577, 8 C. C. A. 188, and 59 Fed. 483. But, passing by this, the objection is clearly not good. The testimony did not tend to contradict, add to, or vary the written contract, but only to show that the contract precisely as made was to take effect and become binding only upon a condition which was never satisfied. Ware v. Allen, 128 U. S. 590, 9 Sup. Ct. 174, is directly in point. The question arose in that case in relation to a promissory note. Testimony was offered to show that, before the paper was signed or agreed upon, it was understood that it was to be of no effect unless, upon consultation with their attorney, the defendants were assured that the proceeding was a lawful one, and that an attachment could be enforced. The court said, in effect, that the case was clearly one of that class well recognized in law by which an instrument, whether delivered to a third person as an escrow or to the obligee in the instrument, is made to depend as to its going into operation upon events to occur thereafter, and that parol evidence was admissible to show that the execution or delivery of the written instrument was conditional, and not to take effect until such subsequent event should take place, although the written instrument was absolute on its face. So, in Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, it was held that in an action by the payee of a negotiable promissory note against the maker, evidence was admissible to show a parol agreement between the parties, made at the time of the making of the note, that it should not become operative as a note until the maker could examine the property for which the note was given, and determine whether he would purchase it. This is a well-settled general rule of evidence in relation to all contracts under which it may be shown that there was a condition precedent which has not been fulfilled in order to avoid the effect of a contract. 2 Tayl. Ev. § 1135; 2 Jones, Ev. §§ 478, 507. We are not required, in dealing with this case, to consider what difference there may be in the application of the rule to negotiable and nonnegotiable paper, nor how far the rule which permits such

evidence is limited to the original parties to the contract, as the question here arises between the original parties to this contract.

Another objection made is to the judgment recovered in the Martin circuit court by Leo Brigel against appellant for $5,057. This objection was properly overruled by the special master and the circuit judge. The defendant company suffered the judgment to be taken in the name of Leo A. Brigel, and the legal title to the judgment and the right to recover are clearly in Brigel; and whether or not, as between Brigel and any third party, the beneficial interest in the judgment belongs in equity to such party, is a question with which we are not concerned here. This view renders it immaterial to inquire how far this objection was waived by the finding of the court as to what judgments there were, and the owners of such judgments, which finding is recited as having been made "with the consent of all parties." This review of the case disposes of all of the objections chiefly relied on by the defendant for a reversal of the decree. The circuit court properly construed the mandate of this court in relation to the disposition to be made of the costs of the cause in the court below. When complainants so amended their bill as to remove the jurisdictional objection, and make a case proper for the court to proceed with, the general costs of the cause in the court below were left to be adjudged by the court on final hearing, just as costs in the ordinary case. We find no error in the action of the court below, and the decree is accordingly affirmed.