In re MINER.

(District Court, D. Oregon. September 12, 1902.)

No. 267.

1. BANKRUPTCY—FINDINGS OF REFEREE—REVIEW.

The findings of fact of a referee in bankruptcy are not conclusive, and will be set aside where the court is of opinion that they are manifestly erroneous.

2. SAME—EXCEPTIONS.

Where the specific question of the correctness of a referee's findings is certified to the district court for decision on petition of a party, no formal exceptions to such findings are required to render them reviewable.

¶ 1. Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.

**3. SAME—DISCHARGE—EVIDENCE TO DEFEAT.**

Evidence considered, and *held* insufficient to sustain specifications of objection to the discharge of a bankrupt on the ground that he had made false oath with respect to a claim against him which he scheduled.

**4. SAME—ASSIGNMENT OF CLAIM.**

The form by which a claim against a bankrupt was transferred is immaterial, and cannot affect the right of the transferee to prove the claim, where it is sufficient to estop the original holder from asserting a right to it.

**5. SAME—PROOF OF CLAIM BY MARRIED WOMAN.**

The failure of a married woman to register a claim against her husband as her separate property under the law of Oregon does not affect her right to prove the same against his estate in bankruptcy.

In Bankruptcy. On petition for rehearing. For former opinion, see 114 Fed. 998.

BELLINGER, District Judge. The petition for rehearing is in effect a reargument of the questions heretofore considered and decided by the court, and a review of the court's opinion in the case. A single new question is presented. It is now contended that the finding and decision of the referee are conclusive. The jurisdiction of this court in bankruptcy proceedings, like that in equity, extends to the examination of all findings made in the case. If the findings of the referee appear to be erroneous, they will be set aside. It is not to be supposed that there is such sacredness in the findings of the referee that the district court will not examine the testimony in support of them, and, becoming satisfied that the referee has erred, will not correct the error. It is quite needless to argue that the district court will not reverse the findings of fact of the referee unless the same are manifestly erroneous. This goes without saying. In this case the order made is upon a conclusion that the findings of the referee are manifestly erroneous. But it is contended that such findings are conclusive on review where no exceptions are filed to the report, and In re Carver, 113 Fed. 138, 7 Am. Bankr. R. 539, is cited to that effect. That was a case presented on certificate of the referee. I doubt whether in that case, as in this, the specific question as to the correctness of the findings involved was certified to the district court for its decision. Where such a question is certified, I am of the opinion that an exception is not necessary. An exception is a form of objection, and the certifying of the question for review involves specific legal objection by the party aggrieved. As a matter of fact, the questions presented were certified upon the petition of the complaining party, in which she formally excepts to the orders in question. "This, your petitioner, hereby excepts to said orders," etc., is the language of the petition, which concludes with a prayer that such order be certified to the district court for review, which was accordingly done.

In addition to the several matters which the petition for a rehearing alleges the court did not consider, it is alleged that the court "in its opinion says nothing of the charge made by the creditors of the false claim presented by the bankrupt in favor of H. E. Smith." In his petition of bankruptcy, Miner made the following statement as to this claim:

"The amount of this claim is not known to the petitioner. The indebtedness was contracted at Merrill, Oregon, and Klamath Falls, ever since 1897. No statement has been furnished, no settlement had. It is for merchandise sold to petitioner."

The objecting creditors say that the bankrupt, by leaving out the amount of the debt due H. E. Smith, "and failing to state the truth about said claim, unlawfully and fraudulently permitted the said H. E. Smith to file and present for allowance against his, the said Miner's, estate, a claim in the sum of $524.29; that Miner well knew, but fraudulently withheld such knowledge, with intent to mislead these, his creditors, now objecting, that there was no greater or further amount of said claim upon or for which he was in any wise liable to the said Smith than the sum of $66.22, notwithstanding he, the said Miner, suffered and permitted said claim to be filed in the said sum of $524.29; that Miner withheld the fact that he and Smith had, about July, and afterwards in August, 1897, a settlement and accounting, and that there was only then to come to the said Smith the sum of $55.39," etc. The petitioning creditors seem to think that the fact of an accounting between the bankrupt and Smith in 1897 is proof that the former committed perjury when he stated in 1900 that he did not know the amount of his debt to Smith. The bankrupt stated that this debt was for merchandise sold since 1897, and it is not denied that there were such dealings between the parties between 1897, the date of the accounting, and 1900, when the petition in bankruptcy was filed. It is true that the court did not specifically consider or particularly mention, in the opinion heretofore rendered, several of the charges of fraudulent and criminal conduct alleged against the bankrupt to prevent his discharge. The court did examine these charges with some minuteness, and it discussed in the opinion what it thought were the more serious ones. It suggested, in effect, that the character of the remaining charges was shown in what was said of those that were discussed. The objections of the creditors included some 24 or more charges of perjury against the bankrupt, of which, as already stated, only the more serious ones, as they appeared to the court, were gone into specifically in the opinion. The court did not feel called upon to discuss all of these charges, or more of them than was necessary to show the character of the complaint as a whole. It did not, for instance, think it necessary to say of the charge above referred to (what is obvious enough) that the mere statement by the creditors that the bankrupt committed perjury in saying that he did not know the amount of his debt to Smith was not to be taken as true in the absence of proof of facts and circumstances affording ground for a presumption of falsehood by the bankrupt, or that the fact of an accounting in 1897 warranted an inference of knowledge by the bankrupt of the state of the account three years later, the parties having dealings together in the meantime; nor did it seem necessary to write an opinion as to the bankrupt's conduct in "suffering" and "permitting" his creditor to file a claim for a larger amount than was actually due. It is said that this was "permitted" in order to give Smith a larger vote in electing a trustee than he was in fact entitled to have. It does not appear that the bankrupt's interests were

affected by the selection of the trustee, or that his permission was necessary to enable Smith to file his claim, or that it could have made the slightest difference in the election of the trustee, or to any interest of the bankrupt, whether he left the amount of Smith's debt blank with the explanation made by him, or inserted the amount finally ascertained to be due.

The question of the assignment by Smith, the petitioner's father, to her, is reargued. The question is a mere technicality, and does not deserve serious consideration. Smith's certificate is in the record, certifying that he has heretofore assigned the claim in question to his daughter. This certificate is as effective as an estoppel against Smith as any formally executed assignment could be. The form of the transfer to the daughter is of no consequence. The statute of frauds is invoked upon the assumption that there can be no transfer between parties of a right or interest, except the formalities required, where an agreement for a future sale is relied upon, are complied with. The section of the statute which requires every assignment of an existing trust in lands, goods, etc., to be in writing, etc., is appealed to. It is stated in the petition for rehearing that this court has not considered the failure of the wife to register the amount of her claim as her separate property, as though a wife is incapable of ownership without registry. A married woman may register her property, and such register is prima facie evidence of her ownership. But the registry of such property is not conclusive either way as to the wife's right. It is said that Mrs. Miner allowed the amount of the assigned claim to remain in her husband's business, and that she took the chances of that investment, etc.; that the court has not considered the point made that the legal effect of the husband's use of the wife's property under the circumstances of this case barred her from any claim. But is it not clear that this is not a case of putting money or property into the bankrupt's business, or allowing him the use of property? The petitioner, as to this, is a creditor, like all other creditors. If her claim is an investment, then the demands of the other creditors represent investments. But there is no investment in the premises, nor is it a case of property used by the bankrupt. The petitioner is a creditor standing on the same footing with other creditors, and having equal rights with them. The only pertinent question in the case is that of the bona fides of her claim, and as to that no question is made, nor is there room for question.

The petition is denied.