## OHIO VALLEY BANK CO. v. MACK et al.

(Circuit Court of Appeals, Sixth Circuit.   April 10, 1906.)

### No. 1,467.

1. BANKRUPTCY—APPEAL FROM ORDER ALLOWING CLAIM—APPEAL BY CREDITOR.

Where a trustee in bankruptcy refuses to appeal from an order of the District Court allowing claims, such court may in its discretion allow an appeal to be taken by a creditor, although the better practice is to order the trustee to appeal or to allow the dissatisfied creditor to appeal in his name; he being in either case indemnified against liability for costs.

2. SAME—CLAIMS—EFFECT OF RELATIONSHIP OF CLAIMANT TO BANKRUPT.

The fact that one presenting a claim against a bankrupt is closely related to him justifies a more rigid scrutiny of the claim than would otherwise be required, but does not alone warrant its rejection.

3. SAME—FINDINGS OF REFEREE—REVIEW.

The position and duties of a referee in bankruptcy in hearings before him are analogous to those of a special master in chancery directed to take evidence and report his conclusions, and the rule applicable to a review of a referee's findings of fact must be substantially that applicable to a master's report. In either case much must depend upon the character of the finding. If it be a deduction from established facts, it does not carry any great weight, but, if based in conflicting evidence and involves the question of the credibility of witnesses examined before the referee or master, the finding should not be disturbed, except on most cogent evidence of mistake or miscarriage of justice, and, when it has been affirmed by the court, it should not be overturned by an appellate court on anything less than a demonstration of plain mistake.

[Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

4. SAME—PROVABLE CLAIMS—MONEY BORROWED TO MAKE PREFERENTIAL PAYMENT.

Where a bankrupt within four months prior to his bankruptcy, and while insolvent, borrowed money on a mortgage, and paid the same on an indebtedness to his father with intent to prefer the latter, the fact of such preference does not invalidate the debt or mortgage of the lender who had no knowledge of the purpose for which the loan was made, and where the father has been required to restore the preference to the trustee.

5. SAME.

The fact that one who lent money to an insolvent within four months-
prior to his bankruptcy himself borrowed the money from a bank, pledg-
ing the note and security given by the bankrupt as collateral, will not af-
fect his right to prove the debt in his own name; and whether it is in·
fact owned by him or the bank is immaterial.

Appeal from the District Court of the United States for the South-
ern District of Ohio.

A. L. Roadarmour and A. R. Johnson, for appellant. ·

E. D. Davis, H. C. Johnston, R. A. Mack, and J. P. Bradbury, for·
appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This is an appeal from the allowance of·
a number of separate claims against the estate of C. C. Mack, an invol-
untary bankrupt.

These claims are as follows: (1) A claim in favor of Charles Stock-
hoff for $6,300, secured by mortgage upon real estate of the bankrupt.
(2) A claim in favor of Charles Mack, Sr., for $14,877.72, subject to
the surrender of $6,377.20, being a perference received by him. (3)·
A claim in favor of Rudolph A. Mack for $1,082, upon condition that
he surrender a preference of $344.70 received by him. (4) A claim
in favor of G. A. Mack for $2,539. (5) A claim in favor of Mrs. Wil-
helmina Mack for $2,968. (6) A claim in favor of Charles Mack, Jr.,
for $1,706.91. (7) A claim in favor of the Charles Mack Company, a
corporation, for $652.90. These claims were each the subject of a bit-
ter contest before the referee and were allowed by him. The order
allowing each of them was duly reviewed by the district judge, who·
confirmed the orders of the referee after requiring Charles Mack, Sr.,
and R. A. Mack, to surrender certain preferences indicated above. This
appeal is by a creditor who was, upon application, allowed to appeal;.
the trustee refusing to appeal, though requested to do so.

This practice seems admissible in the sound discretion of the district
judge when the trustee refuses to appeal, though the better practice·
would be to order the trustee to appeal or to allow the dissatisfied cred-
itor to appeal in his name, being indemnified in either case against costs
by such creditors. Loveland on Bankruptcy, § 317; In re Joseph, 2
Woods, 390, 13 Fed. Cas. 1124; Chatfield v. O'Dwyer et al., 101 Fed.
797, 42 C. C. A. 30; In re Roche, 101 Fed. 956, 42 C. C. A. 115;.
Foreman v. Burleigh, 109 Fed. 313, 48 C. C. A. 376; McDaniel v.
Stroud, 106 Fed. 486, 45 C. C. A. 446. The cases cited present some-
what divergent views as to whether a creditor may as of right appeal·
from the allowance of a debt which affects him, but a concurrence in
the matter of allowing an appeal upon good cause shown by such cred-
itors when the trustee refuses to appeal himself. The six contested
claims last mentioned are presented by members of the bankrupt's
family or by a corporation owned and controlled by his father, Charles
Mack, Sr., and this circumstance has been much pushed as indicating
their fraudulent character. The fact that the bankrupt is closely re-
lated to a creditor is a circumstance which justifies a more rigid scruti--

ny than would be the case if no such relation existed. Nevertheless the honest or dishonest character of a debt is not to be determined by any mere question of relationship. Davis v. Schwartz, 155 U. S. 631, 638, 15 Sup. Ct. 237, 39 L. Ed. 289; Estes v. Gunter, 122 U. S. 450, 456, 7 Sup. Ct. 1275, 30 L. Ed. 1228. Neither are the six claims in question to be treated en masse. Each claim must stand upon its own bottom, and is to be judged by the evidence which tends to prove or disprove it.

The largest of these claims is that allowed in favor of Charles Mack, Sr., the father of the bankrupt. The bona fides of this large claim has been assailed mainly upon the ground of relationship, and because it does not appear from the books of either the creditor or the debtor. But its justice has been testified to by both the bankrupt and his creditor. The character of neither is assailed; upon the contrary, both seem to have stood well in the regard of the community. Charles Mack, Sr., was a merchant of long standing and prosperous. The bankrupt owned and operated a tannery, and this debt to his father consisted substantially of money advanced through a series of years by the father to support the son's business. The course of business, as they say, was for the son to give orders upon the father from time to time. These orders were taken up at the end of the month and a note given, and at the end of the year these small notes were run into a large note. Three of the earliest of these notes were taken up and paid off by the bankrupt with money borrowed from the appellee Charles Stockhoff, for which money he has been allowed a judgment. But, as this payment was made by the bankrupt when insolvent and within four months of bankruptcy, Charles Mack, Sr., has been compelled to surrender same as a preference. The notes thus paid off were destroyed by the bankrupt, and could not be produced. For substantially the remainder of his debt the promissory notes of the bankrupt were filed. Aside from these transactions, the bankrupt had an open store account with his father. This the mercantile books showed, but did not show the money paid on account of his son's tannery business, which, as stated, was kept by filed orders until run into promissory notes. The bankrupt, though having the character of a frugal, diligent business man, seems never to have kept anything like a regular or full set of books, and to have relied upon memorandums and memory. The moneys he obtained from his father aggregated a large sum. Yet it is no more remarkable that his father should credit him for so considerable a sum than that the Ohio Valley Banking Company, the appellant here, should extend him a credit of $16,000 without security, within less than one year prior to his bankruptcy. The undeniable fact is that the bankrupt bore a good character for integrity and frugality, and this gave him credit with all. That he should have used in his tannery business from $30,000 to $40,000 of borrowed money in the course of a few years and have so small a result to show for it is a proper subject of criticism, especially as he has kept no accounts. If we, for these reasons, ignore his admissions as to his debt to his father, and to his other relatives, there remains the uncontradicted evidence of his father as to the bona fides of his own claim. But both of these wit-

nesses, the creditor and the bankrupt, were seen and heard by the referee, and he has credited their evidence and allowed this debt. No arbitrary rule can be laid down for determining the weight which should be attached to a finding of fact by a bankrupt referee. His position and duties are analogous, however, to those of a special master directed to take evidence and report his conclusions, and the rule applicable to a review of a referee's finding of fact must be substantially that applicable to a master's report. Tilghman v. Proctor, 125 U. S. 137, 8 Sup. Ct. 894, 31 L. Ed. 664; Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289; Emil Kiewert & Co. v. Juneau, 78 Fed. 708, 24 C. C. A. 294; Tug River Co. v. Brigel, 86 Fed. 818, 30 C. C. A. 415. Much in both cases must depend upon the character of the finding. If it be a deduction from established fact, the finding would not carry any great weight, for the judge, having the same facts, may as well draw inferences or deduce a conclusion as the referee. But, if the finding is based upon conflicting evidence involving questions of credibility and the referee has heard the witnesses, much greater weight naturally attaches to his conclusion, and the weight of authority is that the district judge, while scrutinizing with care his conclusions upon a review, should not disturb his finding unless there is most cogent evidence of a mistake and miscarriage of justice. Loveland on Bankruptcy, § 32a; In re Swift (D. C.) 118 Fed. 348; In re Rider (D. C.) 96 Fed. 811; In re Waxelbaum (D. C.) 101 Fed. 228; In re Stout (D. C.) 109 Fed. 794; In re Miner (D. C.) 117 Fed. 953. In this case the conclusions of the referee necessarily involved the credibility of the witnesses who testified to the bona fides of the claim preferred by Charles Mack, Sr. The conclusion he reached in favor of the validity of his debt has also passed the scrutiny of the district judge. Under such circumstances this court is not warranted in overturning the conclusions of two courts upon anything less than a demonstration of plain mistake. The preference received by Charles Mack, Sr., was a merely voidable preference; and, upon the surrender by him of the preference received, he was properly allowed to prove his debt. Keppel v. Tiffin Savings Bank, 197 U. S. 356, 25 Sup. Ct. 443, 49 L. Ed. 750. The assignments of error against this claim must be overruled.

Mrs. Mack was the mother of C. C. Mack, the bankrupt. She filed the notes of the bankrupt evidencing her debt. She had some means of her own, managed for her by her husband, Charles Mack, Sr. The bona fides of her claim is testified to by her husband and by the bankrupt, and there is nothing to throw serious doubt upon the matter aside from the suspicion which arises out of relationship.

Substantially the same state of facts was shown in respect of the claims preferred by the three brothers of the bankrupt. It may, however, be said of each of them that their ability to make loans to their brother was much more doubtful. This fact, however, went at last to their credibility and that of the bankrupt. The referee heard them. He was in the atmosphere which surrounded the case and must have believed them.

No better case is made against the claim of the Charles Mack Company. No plain mistake of fact or law has been pointed out.

The error assigned against each of the debts mentioned must be overruled.

The claim of Charles Stockhoff remains to be considered. It stands upon a somewhat different and less suspicious footing than the claims we have already passed upon. He was not a member of the Mack family. That he actually let C. C. Mack, the bankrupt, have $6,300 a few days before the involuntary petition in bankruptcy was filed against him, and took a mortgage upon real estate to secure him, is not disputed. Neither is it disputable that C. C. Mack was in fact insolvent at date of this transaction, nor that he paid the money so obtained to his father, Charles Mack, Sr., in payment of part of the large debt which Charles Mack, Sr., then held against his son, the bankrupt. Neither is it seriously disputable that the bankrupt's object in borrowing this money was to prefer his father over his other creditors. That Charles Mack, Sr., did thereby obtain a preference, has been adjudicated, and he has been required to surrender to the trustee the $6,300 so received.

There remains, then, the single question as to whether Stockhoff was chargeable with notice of C. C. Mack's insolvency and of his purpose to use the money so obtained from him for the purpose of preferring his father. That neither C. C. Mack nor Charles Stockhoff had any purpose of defrauding the former's creditors, in the sense of actual common-law fraud, is plain. The most that can be claimed is that he intended to prefer his father in an honest debt over his other creditors having equally as honest claims upon him. This was a preference voidable only under the bankrupt law. Under that law the payment to Charles Mack, Sr., has been avoided and the Stockhoff money paid to the trustee for general administration and Mack's general creditors have suffered no loss. The question as to whether Stockhoff knew C. C. Mack's insolvent condition and his purpose to prefer his father with the money borrowed was one of fact, about which different opinions might be entertained by a tribunal of first instance. The finding of the referee is general and not specific, but the district judge upon review said:

"The evidence does not warrant a finding that Stockhoff knowingly abetted the bankrupt in, or Charles Mack. Sr., in receiving the $6,300 as a preference; and the finding of the referee as to Stockhoff's claim will be sustained."

It is enough to say that the state of the evidence does not, under the principles effecting appeals upon questions of fact determined by a referee who heard the witnesses and confirmed by the district judge, warrant a refusal to accept the conclusion of the courts below that Stockhoff did not knowingly abet the bankrupt in giving a preference to Charles Mack, Sr. He stands, therefore, in the attitude of one who took a security for money advanced at the time in good faith. This saves his mortgage.

It is also objected to this debt that the real creditor is not Charles Stockhoff, but the First National Bank of Gallipolis, Ohio, and that the claim should be rejected upon this account. Stockhoff borrowed the money to make this loan from the bank, and gave his own note. To secure it he placed C. C. Mack's note and mortgage as collateral

security. C. C. Mack's note was made to Stockoff for $6,300, bearing interest at rate of 8 per cent. Stockhoff's note to the bank bears only 6 per cent. interest. That the bank agreed to lend the money upon Stockhoff's note with Mack's note and mortgage as collateral does not make the claim which Stockhoff here presents the claim of the bank. The debt is Mack's debt to Stockhoff. Mack is not debtor to the bank, except in so far as his note stands as a collateral to Stockhoff's debt to the bank. But whether there is some secret agreement between Stockhoff and the bank by which the bank is the real lender is of little moment. Whether Stockhoff owns the debt in his own right or as trustee for the bank he is entitled to prove it, for it stands as a debt and mortgage to him and his relation as trustee for the bank is of no significance as an objection to the allowance of the claim.

The orders and judgments appealed from must be affirmed.

NOTE.—The following is the opinion of Thompson, District Judge, on overruling the motion for a new trial:

THOMPSON, District Judge. Two petitions have been filed, one for a review of the findings and orders of the referee allowing the claims of Charles Mack, Sr., Charles Mack, Jr., the Charles Mack Company, R. A. Mack, G. A. Mack, Wilhelmina Mack, Charles F. Stockhoff, and E. B. Davis; and the other for the review of his order allowing attorney's fees.

The questions presented are: (1) Was the bankrupt indebted to the persons the allowance of whose claims is complained of? (2) Were preferences given by the bankrupt to Charles Mack, Sr., and to R. A. Mack? (3) Did Stockhoff knowingly aid Charles Mack, Sr., in obtaining a preference by a mortgage on the bankrupt's real estate? (4) Were the allowances made to attorneys reasonable?

First. The claims of the father and mother and brothers and sisters and brothers-in-law of the bankrupt aggregate $27,866.53. He claims that he began to borrow money from them and incur indebtedness to them in other ways as early as 1888, and continued to do so until January, 1903. The greater part of the indebtedness was evidenced by promissory notes bearing interest at the rate of 8 per cent. per annum and the remainder thereof, as claimed, by book accounts and written orders for merchandise, etc. The orders were not produced because they had been destroyed. The books of Charles Mack, Jr., were destroyed by fire before the bankruptcy, and various excuses were given for the nonproduction of the books of most of the others. Some books were produced, but furnished little or no pertinent information. One of the books produced by Charles Mack, Sr., has a line cut out immediately beneath the name of G. A. Mack, and pages 327 and 328 of the same book are missing. The bankrupt, although doing a large business, kept no books, and it was his practice to destroy all notes and other evidences of indebtedness as soon as the debts were paid or settled. The petitioning creditors are members of the family. The answer given to a majority of the questions put to the bankrupt while under examination, was, "I don't remember"; and the testimony of the other members of the family who were witnesses was not much more satisfactory. Each one denied any knowledge of the claims of the others, except R. A. Mack and one other, who stated that they understood or knew that the father and mother had some claim against the bankrupt, but could give no definite information as to the amount or the character of it. It is claimed that Charles Mack, Sr., in the summer of 1903 asked the bankrupt for some money; but, with that exception, all testify that they never asked or received any payment upon their claims, and that the bankrupt never paid anything upon either the interest or the principal of their claims. They charged 8 per cent. interest on their loans to the bankrupt, and the doctor and the lawyer, G. A. Mack and R. A. Mack, charged him large fees for their professional services, but, as no member of the family except the father ever demanded payment of either the principal or the interest on their claims, their course of dealing with him may be regarded as liberal, and the

circumstances present a strong suggestion that they might never have demanded payment of their claims but for his bankruptcy. There are some circumstances in the course of the dealings between the bankrupt and his father which tend to sustain the claim that he was indebted to his father to some extent—for instance, the delivery of goods, etc., to his workmen upon orders sent to his father—but substantially the only evidence introduced in support of their claims is the testimony of the claimants themselves and the decision of the question under consideration turns upon their credibility as witnesses. The referee saw and heard and believed them. He had an opportunity to observe their manner and bearing while testifying, and to measure their intelligence and memory and test their truthfulness, and without his means of knowledge, and in the absence of testimony impeaching their general reputation for truthfulness, this court would not be justified in setting aside his findings that the bankrupt was indebted to them when the petition was filed.

Second. The bankrupt was insolvent, and he knew he was insolvent when he mortgaged his real estate for the loan of $6,300, and the payment of those moneys to his father, Charles Mack, Sr., in part payment of his indebtedness to him, was a preference within the meaning of the bankrupt law, as was also the transfer of leather to Charles Mack, Sr., about January 19, 1903, to the extent the leather exceeded the value of $290, the sum then advanced to the bankrupt, and the referee should have conditioned the allowance of the claim of Charles Mack, Sr., for $8,577.72, upon the surrender of these preferences. The evidence tends to show that Charles Mack, Sr., had reasonable grounds to believe that the bankrupt in paying him the $6,300 and in transferring the leather to him intended thereby to give him a preference, and the trustee will be directed to consider the matter further, with a view to the bringing of a suit in this court for the recovery of said moneys and of the value of said leather. See section 60b of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445] as amended in 1903).[1] The transfer of leather to R. A. Mack on or about the 19th of January, 1903, was also a preference within the meaning of the bankrupt law, and his claim against the bankrupt should not be allowed until the preference is surrendered. He knew that the bankrupt was insolvent when the leather was delivered to him, and the trustee will be directed to consider the matter further with a view to the recovery of the value of the leather.

Third. The evidence does not warrant a finding that Stockhoff knowingly abetted the bankrupt in giving, or Charles Mack, Sr., in receiving, the $6,300 as a preference; and the finding of the referee as to Stockhoff's claim will be sustained.

Fourth. The allowance of attorney's fees made by the reference are unreasonable and in violation of the spirit of the bankrupt law. R. A. Mack should be allowed a reasonable fee for preparing the bankrupt's schedules, etc., but is not entitled to compensation for services rendered at the hearing before the referee upon the question of the allowance of the family claims. It was the duty of the bankrupt to submit himself to the referee and the creditors for examination and to tell the truth, but he was not called upon to employ attorneys to defend claims presented against his estate. R. A. Mack will be allowed $25 for his services, and no more. The attorneys for the petitioning creditors are entitled to a reasonable fee for filing the petition, procuring the adjudication thereon, the appointment of the receiver, and for services rendered the receiver. The receiver is a lawyer and an able one, and I cannot conceive of great need on his part for the services of attorneys. The attorneys for the petitioning creditors, Hollis C. Johnston and Evan D. Davis, will be allowed for their services the total sum of $150, and no more. The trustee is a lawyer and an able one, and should not employ lawyers to do any work which the law requires him to do, and he certainly should not employ lawyers to procure the allowance of claims against the estate; but, if needed, he should employ them to prevent the allowance of claims against the estate, when any doubt of their validity exists. The ground upon which the attorneys claim $400 for services rendered to the trustee has not been brought to the attention of the court either by the attorneys or the referee, and the court cannot therefor approve the allowance of that amount or of any amount until more fully

[1] Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (U. S. Comp. St. Supp. 1907, p. 1031).

163 F.—11

advised. Upon the matter, as now presented. the allowance made by the referee appears to the court to be unreasonable. The record in this matter shows that at the hearing before the referee things were said and done which a due regard for orderly procedure and the dignity of the court makes it the duty of the court to notice and condemn. R. A. Mack, who appeared before the referee in the threefold character of witness, creditor, and attorney for the bankrupt, and whose behavior throughout the hearing was unseemly and offensive, while on the witness stand, when asked if he could give the names of the directors of the Ohio Valley Banking Company, without provocation and with utter irrelevancy to the question put to him, denounced one of the directors of the bank and its attorney, both reputable men, then present, in coarse and insulting language, and persisted in it when rebuked by the attorney who was conducting the examination, and, strange to say, was per- mitted to do so by the referee. The referee should not only have rebuked him for his misbehavior, but in accordance with the provisions of section 41 of the bankruptcy act should have certified the facts showing his misbehavior to this court for its consideration and action. The allowance of the claims of Charles Mack, Sr., and of R. A. Mack by the referee will be set aside, and all findings and orders of the referee inconsistent with this opinion will be set aside and vacated.