## KOWALSKY v. AMERICAN EMPLOYERS INS. CO. OF BOSTON, MASS.
### No. 7216.

Circuit Court of Appeals, Sixth Circuit.
June 2, 1937.

Alan W. Joslyn, of Detroit, Mich. (Lee E. Joslyn and Lee E. Joslyn, Jr., both of Detroit, Mich., on the brief), for appellant.

Samuel Shapero, of Detroit, Mich. (Shapero & Shapero, of Detroit, Mich., on the brief), for appellee.

Before HICKS and SIMONS, Circuit Judges, and MARTIN, District Judge.

MARTIN, District Judge.

This case is here on appeal of the bankrupt, Isadore Kowalsky, from a single order of the District Judge (1) sustaining all exceptions of a creditor, American Employ-ers Insurance Company of Boston, Mass., to the report of the referee in bankruptcy, which recommended that the application for discharge be granted; and (2) denying the discharge of the bankrupt.

The voluntary petition in bankruptcy was filed February 3, 1931, adjudication and reference ordered February 12, 1931, and a petition for discharge filed April 2, 1931. On May 23, 1931, the objecting creditor, American Employers Insurance Company, filed specifications of opposition to the discharge. On November 2, 1931, final discharge in bankruptcy was granted, from which appeal was taken; and on March 22, 1933, an order was entered on mandate pursuant to an order of this court of February 15, 1933, vacating the District Court orders, which had dismissed the specifications and granted the discharge, and instructing the District Court to grant a hearing upon the merits of the specifications. American Employers' Insurance Co. v. Kowalsky (C.C.A.) 63 F.(2d) 994.

Pursuant to the mandate, the District Judge, on April 11, 1933, re-referred the specifications of the objecting creditor to the referee, who, after considering oral and documentary evidence, filed his report on February 27, 1934, recommending that the specifications be overruled and that the discharge be granted.

The first specification of the grounds of opposition to the discharge of the bankrupt charged him with failure to keep books of account and records, in that sales, disposition and acquisition of property and assets were not recorded, a check register was not kept, bank deposits were not entered, and were made in the names of others—all with intent to conceal his financial condition.

The second and fifth specifications charged fraudulent concealment of specified property and assets; the third charged transfer of real and personal property for the purpose of hindering, delaying and defrauding creditors and the acquisition in secret trust of property in the names of other persons with funds properly belonging to the trustee in bankruptcy; and the fourth and sixth specifications charged that the bankrupt, knowingly and fraudulently, made false oaths and accounts in relation to the proceedings in bankruptcy in certain specified particulars.

The findings of the referee, in substance, were that the bankrupt, from 1917 until late in 1927, was engaged in various

real estate and tax title transactions, during which period Shapero & Shapero, attorneys for the objecting creditor, were his attorneys and, through a clerk, kept his books and records; that this law firm had a one-fourth interest in all money collected on upwards of ten thousand tax titles and tax deeds (of the face value of between four and five hundred thousand dollars) which the bankrupt purchased or contracted to purchase from a Chicago company, in consideration for which interest the attorneys were to render services in collecting the tax titles.

From time to time, the bankrupt borrowed money from the Shapero law firm, and executed a contract to secure repayment. In 1928, the bankrupt sued the Shaperos to rescind this contract and for an accounting. The trial of the case consumed approximately eight weeks' time in a state court and resulted in a holding that a court of equity would not sustain the contracts, because of the relationship of attorney and client, existing at the time the contract, termed "an absolute transfer of all of the tax titles," was executed between the parties. The court also found that following adjustment between the parties in 1927, new contracts, drawn by the same attorneys, reaffirmed all the objectionable features of the first contracts. The net result of this litigation was the allowance of $3,000 to the attorneys, instead of $100,000 claimed by them; and that, upon default of payment by the bankrupt, the tax titles in the Shaperos became absolute. From these facts, the referee concluded that the bankrupt did not own any of the tax titles at the time he filed his petition in bankruptcy and that, therefore, he could not be charged with having concealed them as assets.

With respect to the keeping of books of account and records, the referee found that when the bankrupt opened an office of his own, following his separation from the Shaperos, he procured the services of their employee who had kept his books in their office; and that she continued to keep them in the same manner until a receiver, in a proceeding against the bankrupt, took possession, from which time the bankrupt has had no charge or control of his voluminous books, records and papers, which embraced between eight and nine thousand different files.

The referee found further that the books, records and papers were subsequently placed in the hands of the attorneys, Shapero & Shapero, who have at all times had them in their possession or under their control, and who, notwithstanding the charges laid by them against the bankrupt in their specifications as attorneys for the objecting creditor, produced and brought into court at the hearings what purported to be records of substantially all of the various tax deeds and tax titles, and likewise many files showing various transactions with the bankrupt.

The referee also found that the bookkeeper, up until the time when the bankrupt's office effects were seized in the receivership proceedings, kept a record of all the transactions of the bankrupt, including all receipts of cash and disbursements, and that these records were kept in an apparently complete manner.

The referee reported this finding: "I further find that there is no testimony showing or tending to show that at the time the petition in bankruptcy was filed, the bankrupt was the owner or had any interest in any of the property which it is claimed he concealed from the trustee in bankruptcy as referred to in the second, third, fourth, fifth and sixth specifications; that if the bankrupt had any interest in any of this property it has not been established by the evidence."

The referee reported two conclusions of law: "(1) If the bankrupt did fail to make records of his transactions after all of his property had been taken from him and lost in the litigation (but I do not so find) when he was without funds to employ a bookkeeper and when he was wholly unable himself to keep books, that under the provisions of section 14b (2), as amended (11 U.S.C.A. § 32(b) (2), the bankrupt was justified under all the circumstances of the case in any failure to so keep books and records.

"(2) That the burden of proof of establishing any specifications of objections is upon the opposing creditor and that the objecting creditor has failed to prove by competent evidence any of the several specifications in opposition to the bankrupt's discharge."

On March 8, 1934, the appellee, by Shapero & Shapero, attorneys, filed exceptions to the report of the Referee, stating "that the following findings of fact are untrue," listed thus:

A. That Shapero & Shapero ever kept the books of the bankrupt prior to 1936.

B. That the bankrupt lost his tax titles prior to the filing of the petition.

C. That the bankrupt did not own any of the tax titles at the time he filed his petition.

D. That the employee of the bankrupt kept the bankrupt's books in the same manner as they had previously been kept.

E. That the bankrupt had no place of business and was unable to keep books or records.

F. That the attorneys for the objecting creditors brought substantially all the various deeds and tax titles covering the various transactions of the bankrupt.

G. That the bookkeeper did, until the time the bankrupt's office was taken away from him, keep a record of transactions in the manner set forth in said report.

H. To the finding that the bankrupt was not the owner and had no interest in property concealed from the trustee.

To this statement was added exception "to the following conclusions of law of the Referee," listed as follows:

A. That it was necessary to call other witnesses to testify about the interests of the bankrupt, the ownership of which he admitted in pleadings or on the stand.

B. That the bankrupt was justified in failing to keep records.

C. That the objecting creditor has failed to file competent proof to sustain the specifications.

It will be observed that the foregoing exceptions are nothing more than an expression of general dissatisfaction with the entire report of the referee, and point out no specific ground of error in any enumerated finding.

The District Judge entered, on November 13, 1934, an order sustaining the exceptions, and denying the discharge.

Though the District Judge sustained the exceptions of the objecting creditor in all respects, his order fails to enlighten us as to the reasonable basis, in fact or in law, for reversal of the referee. No opinion, or findings of fact or conclusions of law, were filed by the court.

■ It is true that the District Judge is not bound by the findings of fact of a special master. Though he should not lightly set them aside, he may, if they appear to him against the clear weight of the evidence; and, if he does, the master's findings are without controlling force in Circuit Courts of Appeals. Grossberger v. B. F. Goodrich Rubber Co., 8 F.(2d) 964 (C.C.A.6); In re Moran, 299 F. 222, 224 (C.C.A.6).

■ But the District Judge should not disturb the findings of fact of a referee in bankruptcy, unless there is most cogent evidence of mistake and miscarriage of justice. In Ohio Valley Bank Co. v. Mack, 163 F. 155, 158, 24 L.R.A.(N.S.) 184, we said: "No arbitrary rule can be laid down for determining the weight which should be attached to a finding of fact by a bankrupt referee. His position and duties are analogous, however, to those of a special master directed to take evidence and report his conclusions, and the rule applicable to a review of a referee's finding of fact must be substantially that applicable to a master's report. Tilghman v. Proctor, 125 U.S. 136, 137, 8 S.Ct. 894, 31 L.Ed. 664; Davis v. Schwartz, 155 U.S. 631, 15 S.Ct. 237, 39 L. Ed. 289; Emil Kiewert Co. v. Juneau, 78 F. 708, 24 C.C.A. 294; Tug River Co. v. Brigel, 86 F. 818, 30 C.C.A. 415. Much in both cases must depend upon the character of the finding. If it be a deduction from established fact, the finding would not carry any great weight, for the judge, having the same facts, may as well draw inferences or deduce a conclusion as the referee. But, if the finding is based upon conflicting evidence involving questions of credibility and the referee has heard the witnesses, much greater weight naturally attaches to his conclusion, and the weight of authority is that the district judge, while scrutinizing with care his conclusions upon a review, should not disturb his finding unless there is most cogent evidence of a mistake and miscarriage of justice. Loveland on Bankruptcy, § 32a; In re Swift (D.C.) 118 F. 348; In re Rider (D.C.) 96 F. 811; In re Waxelbaum (D.C.) 101 F. 228; In re Stout (D.C.) 109 F. 794; In re Miner (D.C.) 117 F. 953." See to the same effect: Rasmussen v. Gresly, 77 F.(2d) 252 (C.C.A. 8); In re Slocum, 22 F.(2d) 282 (C.C.A. 2); Walter v. Atha, 262 F. 75, 77 (C.C.A. 3); Baker v. Bishop-Babcock-Becker Co., 220 F. 657 (C.C.A.4); Bank of Commerce v. Matthews, 257 F. 292 (C.C.A.7); Id. (C. C.A.) 272 F. 263; In re Croonborg, 268 F. 352 (C.C.A.7); In re Wheeler, 165 F. 188 (C.C.A.7).

The foregoing cases show accord in the circuits with the views of this court expressed in the earlier case, Ohio Valley Bank Co. v. Mack, supra. The most recent of

the list, Rasmussen v. Gresly, supra, decided May 3, 1935, holds that the determination of a referee in bankruptcy of issues of fact, based upon the evidence of witnesses appearing in person before him, where such determination must rest upon the credibility of the witnesses and the weight of their evidence, should ordinarily be accepted upon review, except in those cases where it is obvious that the referee has made a mistake.

■ In the instant case, inasmuch as the District Judge set aside the findings of the referee, the necessary inference follows that he held the opinion that the referee obviously erred. When a case reaches this court on appeal, it is only where there are concurrent findings of fact by the referee in bankruptcy and the District Judge that the findings will not be set aside on anything less than demonstration of plain mistake. In re Maki, 18 F.(2d) 89 (C.C.A.6); Grossberger v. B. F. Goodrich Rubber Co., 8 F.(2d) 964 (C.C.A. 6); Johnson v. Ellmers, 295 F. 685 (C.C. A.6); Tennessee Finance Co. v. Thompson, 278 F. 597, 600 (C.C.A.6); Tug River Coal, etc., Co. v. Brigel, 86 F. 818 (C.C.A.6); Emil Kiewert Co. v. Juneau, 78 F. 708 (C.C.A. 6); Davis v. Schwartz, 155 U.S. 631, 15 S. Ct. 237, 39 L.Ed. 289; Crawford v. Neal, 144 U.S. 585, 12 S.Ct. 759, 36 L.Ed. 552.

■ It is recognized, however, that the right to discharge in bankruptcy should be liberally construed. In re Goldberg, 53 F. (2d) 454, 455, 457, 80 A.L.R. 399 (C.C.A. 6); In re Jacobs, 241 F. 620 (C.C.A.6).

■ Counsel for appellant urge, with much force, that the exceptions to the report were insufficient in law to warrant their consideration by this court. This criticism of the exceptions is, in our opinion, well grounded. They are too general, point to no specific evidence establishing their correctness, specify no particular error except by ipse dixit, without offering reason for aggrievement, and signify nothing except general dissatisfaction with the entire report. The exceptions are not in conformity with appropriate practice or established law. In exceptions to the report of a master, mere general assignments of error, pointing to no particulars, were held, in early cases, to be inadequate. Dexter v. Arnold, Fed.Cas.

No. 3,858, 2 Summ. 108, 125 (Opinion by Mr. Justice Story); Story v. Livingston, 13 Pet. 359, 366, 10 L.Ed. 200; Greene v. Bishop, Fed.Co.No. 5,763, 1 Cliff. 186, 191; Harding v. Handy, 11 Wheat. 103–127, 6 L.Ed. 429 (Opinion by Chief Justice Marshall).

■ It is settled law that exceptions to the report of a master should point out specifically the errors upon which the party relies, not only that the opposite party may be apprised of what he has to meet, but that the master may know in what particular his report is objectionable, and may have an opportunity to correct his errors or reconsider his opinions; and also because the main object of a reference being to lighten the court's labors, the court should not be obliged to rehear the whole case on the evidence, when the report is made. Sheffield and Birmingham, etc., R. Company v. Gordon, 151 U.S. 285, 14 S.Ct. 343, 38 L.Ed. 164; Story v. Livingston, 13 Pet.(38 U.S.) 359, 10 L.Ed. 200; Wright v. Barnard (D. C.) 264 F. 582; In re Association Dairy Co. (D.C.) 251 F. 749; H. C. Cook Co. v. Little River Mfg. Co. (C.C.) 164 F. 1005; Fordyce v. Omaha, etc., R. R. (C.C.) 145 F. 544, 557, 558; Neal v. Briggs (C.C.) 110 F. 477.

But no motion was made to strike the exceptions for impertinence or insufficiency. The District Judge considered and sustained them; and we have found ourselves bound to review the evidence adduced before the referee.

■ Our conclusion is that the findings of fact by the referee were in all material respects correct. The effort of the only objecting creditor (a bonding company which had become surety for the bankrupt at the request of counsel when they represented the bankrupt in another proceeding) to defeat the discharge in bankruptcy failed to produce a preponderance of evidence that the illiterate bankrupt had been guilty of the acts charged in the specifications in opposition to the discharge.

It follows that the order of the District Judge, entered November 13, 1934, sustaining the exceptions to the referee's report and denying the discharge, is reversed, and the cause is remanded with instructions to grant the discharge.