### BRADY v. KERN.

(District Court, E. D. Pennsylvania. January 4, 1915.)

#### No. 2682.

1. EVIDENCE (§ 155*)—EVIDENCE ADMISSIBLE BY REASON OF ADMISSION OF OTHER EVIDENCE.

Where, in an action on a written contract to purchase certain corporate stock, plaintiff was permitted to testify that $100 paid at the time was part of the purchase price, and that defendant agreed to go to the different holders of trust certificates representing the stock and secure such of it as he might be able to get, plaintiff assuring him, however, that he would be able to get it all within the price stated, defendant was entitled to testify in resistance that the contract was not absolute, but conditional on his being able to get sufficient money from his bankers to carry the deal through, and that the amount paid down was a forfeit, to be retained by plaintiff in case defendant was unable to perform.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 445–458, 2148; Dec. Dig. § 155.*]

2. EVIDENCE (§ 420*)—CONTRACTS—CONDITION.

Where plaintiff sued on an alleged absolute contract by which defendant agreed to purchase certain corporate stock from him, defendant was entitled to prove that the contract was not absolute, but conditioned on the result of his ability to complete the purchase at the time mentioned, and was not otherwise to become operative as an agreement.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1728, 1795, 1800, 1804, 1815, 1821, 1929–1944; Dec. Dig. § 420.*]

At Law. Assumpsit by Arthur C. Brady against Martin E. Kern. On motion for a new trial. Verdict for defendant. Plaintiff's motion for new trial denied, and leave granted defendant to move for judgment on the verdict.

E. Spencer Miller, of Philadelphia, Pa., and Montgomery Hare, of New York City, for plaintiff.

Lawrence H. Rupp, of Allentown, Pa., and Owen J. Roberts and Preston K. Erdman, both of Philadelphia, Pa., for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

DICKINSON, District Judge. The verdict was for the defendant. There is only one question left in the cause. It is purely an appellate one, and is decisive of the case. What it is and how it arose may be best shown by contrasting the plaintiff's case with the defense. A general statement of the issue between the parties is this:

The plaintiff claimed $131,188.50 loss on sale of stock which defendant had agreed to buy of plaintiff for $131,500, less $100 paid on account, and the sale of which netted $211.50. The defense was that the purchase was conditional; the true version of the facts being that the defendant had deposited with the plaintiff $100, to be forfeited upon his failure to take up the stock at the time fixed. The verdict settles the question of fact. The evidence consisted in part of writings and in part of oral testimony. The real question is whether the defense should have been determined upon the writings alone, or upon the consideration of the oral testimony as well. The question was twice raised. The testimony was objected to as inadmissible, and the court was in effect requested to direct the jury to disregard it. The testimony was admitted, and the jury were instructed that they should find the facts from the evidence.

The plaintiff declared first upon a purchase of stock, without indicating whether the agreement was in writing or oral. The purchase is declared to have been a purchase of shares of stock, which are averred to have been "represented" by trust certificates. A memorandum of the agreement of purchase is further alleged to have been put in writing and signed by defendant, who thereupon paid $100 on account of the purchase price, and agreed to consummate the sale at a designated time, which agreement of purchase the plaintiff accepted at the prices named. A copy of the memorandum of purchase is attached to the statement of claim. It is as follows:

"I agree to pay to Arthur C. Brady $75 per share for approximately 1,500 shares of the preferred stock of the International Motor Company and $10 per share for about 1,900 shares of the same company before 12 o'clock noon December 3, 1912.                   [Signed]   Martin E. Kern."

The declaration adds the averment that the number of the shares of stock to be bought was not definitely set forth in the writing, because the exact holdings of the plaintiff were not known to the parties, but that the "intent" was the defendant should buy all of plaintiff's holdings, and that by the words "shares" and "stock" and "preferred stock," appearing in the writing, neither stock nor certificates of stock were meant to be bought, but voting trust certificates. This feature of the declaration is concluded with the averment that the defendant knew the plaintiff's holdings were represented by trust certificates, and that plaintiff had tendered the stock at the time named for its delivery. The defendant pleaded the general issue, with notice of special matter, and the parties went to trial on these pleadings.

At the trial the plaintiff was called as a witness, and testified to conversations and circumstances tending to prove that a sale of the stock had been made and $100 paid on the purchase price, and that a memorandum of the terms of purchase had been reduced to writing and signed by the defendant. The writing was produced, identified, and

put in evidence. The plaintiff was then thus situated: He had averred. a tender of the stock. The agreement of purchase as proven was of no definite number of shares. The fact was that he had no stock to deliver, because his holdings were not of stock, but of trust certificates. Instead of standing upon the agreement of purchase, as set forth in the memorandum, he varied its terms by testifying to an oral agreement that the writing was to be read, not as a purchase of a definite number of shares of stock, but of all his holdings, whatever they were, and not a purchase of certificates of stock, but of the voting trust certificates for which they had been exchanged. This he might not have been required to do, but he did more than this.

The further fact was that he had neither certificates of stock nor trust certificates to deliver, for the reason that all the certificates were held by different banks, trust companies, and brokers, with whom they had been hypothecated. To relieve himself of the obligation to deliver anything, he sought to again vary the agreement of purchase by testifying to an oral stipulation that he was not to deliver the stock, but that the defendant was to go to the different holders of the stock and thus secure such of it as he might be able to get; the plaintiff assuring him, however, that he would be able to get it all within the price named. The consequence, of course, was that the plaintiff testified to all the occurrences of the evening when the contract was made. Incidentally he denied, at first inferentially, and on cross-examination categorically, that the agreement of purchase was to become effective only if defendant was able to raise the money, and denied in toto anything having been said of the $100 being in the nature of liquidated damages, and to be forfeited if defendant was unable to complete the purchase.

[1] The plaintiff having thus testified to all which had been said and done, was it error to permit the defendant and his witnesses to give the defendant's version of the facts? The question would seem to carry with it its own answer. The evidence having been admitted, what effect was it proper to permit the jury to give to it?

[2] The defendant and his witnesses all denied the stipulation as to delivery of the stock to which the plaintiff had testified. They deposed that nothing of the kind had taken place. What had been said was in effect that the purchase was a conditional one. The defendant was to see his bankers the next morning, and the agreement was to become operative at the time fixed if he could put a sale through. If he could not, he was to forfeit the $100 paid down. Had the finding of the jury been confined to whether the defendant had waived delivery of the stock, no objection could have been urged by the plaintiff to the instruction. A failure to refer to defendant's testimony, by confining it to a mere denial of what had been said by the plaintiff, would have been manifest injustice to the defendant. In reality and in fact the rejection by the jury of the testimony on the one side was the equivalent of the acceptance of that of the other. In strict logic and in theory, however, this is not necessarily so, and it is therefore pertinent to inquire whether defendant's testimony would have been admissible, had the plaintiff not testified. The general rule which protects contracts

in writing from being emasculated through oral testimony is a wholesome one, and all qualifications asked to be made should be closely scrutinized. The qualifications of the rule are none the less somewhat numerous. It must necessarily be so, and we think the defense in this case to be within the qualifications. We see no difference in principle between it and other defenses which have been admitted.

Among the many cases illustrative of the exceptions to the general rule it is sufficient to refer to Ware v. Allen, 128 U. S. 590, 9 Sup. Ct. 174, 32 L. Ed. 563; Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; Tug River Co. v. Brigel, 86 Fed. 818, 30 C. C. A. 415.

We have considered with care the very able and earnest presentation of the plaintiff's side of these questions by his counsel, but it leaves us unconvinced.

The motion for a new trial is refused, and leave is granted defendant to move for judgment on the verdict in favor of the defendant and against the plaintiff for costs.