## POWERS v. MARYLAND CASUALTY CO.

District Court, D. Massachusetts.   April 24, 1928.

### No. 3070.

**1. Bankruptcy ⊗⇒151—Trustee in bankruptcy had no greater rights than bankrupt finance company under agreement to indemnify bankrupt against loss from purchasing fictitious accounts receivable (Bankr. Act, § 47a, as amended in 1910, 11 USCA § 75(a).**

Where defendant had entered into agreement for nominal consideration, to indemnify finance corporation against loss through purchase of fictitious accounts receivable, and parties had agreed that defendant should not be bound by indemnity agreement, trustee in bankruptcy of guaranty corporation stood in shoes of bankrupt, and his rights under indemnity agreement were no greater than those of bankrupt; Bankruptcy Act, § 47a, as amended in 1910 (11 USCA § 75(a), giving trustee rights of creditor, not being applicable.

**2. Evidence ⊗⇒462—Parol evidence rule did not preclude defendant from showing that purported indemnity agreement was not to operate as such.**

Parol evidence rule did not preclude defendant from showing, in suit by trustee in bankruptcy of finance corporation, that what on its

face purported to be agreement whereby defendant agreed to indemnify bankrupt against loss through purchase of fictitious accounts receivable was not to operate as such.

**3. Evidence ⊜═462—Indemnity company, issuing bond against loss from fictitious accounts, held entitled to show that it was issued for moral effect only, under express written stipulation that no liability should attach.**

Where parties agreed in separate written instrument that bond whereby defendant agreed to indemnify plaintiff's bankrupt against loss through purchase of fictitious accounts receivable should not be binding on defendant, but was for moral effect on bankrupt's customers only, defendant, to avoid liability to trustee in bankruptcy for loss sustained by bankrupt in purchasing partly fictitious accounts receivable, could show in evidence true conditions of entire agreement.

At Law. Action by Walter Powers, trustee in bankruptcy of the New England Guaranty Corporation, against the Maryland Casualty Company. Judgment for defendant.

Sherburne, Powers & Needham, of Boston, Mass., for plaintiff.

Bartlett, Jennings & Smith, of Boston, Mass., for defendant.

BREWSTER, District Judge. The plaintiff is trustee in bankruptcy of the New England Guaranty Corporation (hereinafter referred to as the Guaranty Corporation). He brings this action at law against the defendant, Maryland Casualty Company, to recover a loss of $5,845.22, incurred by the Guaranty Corporation by purchasing partly fictitious accounts receivable, which loss the plaintiff alleges was covered by a bond of indemnity issued by the defendant to the Guaranty Corporation. The Guaranty Corporation is a finance corporation, engaged in the business of buying accounts receivable. The business was conducted along familiar lines. The Guaranty Corporation took assignments of accounts receivable and advanced thereon a certain percentage of their face value. It authorized the assignor to collect the accounts as its agent and to remit the proceeds as collected. It received from the customer compensation for the services rendered. Its business was done with customers who, presumably, were in need of cash, and the hazards of the business were considerable; one of them being the temptation that customers would obtain money by assigning fictitious accounts.

The officers of the Guaranty Corporation conceived the idea that, if it could cause customers, from whom it took assignments of accounts, to insure their accounts, this would have a tendency to hold the customer to a more strict observance of the terms of the contract under which the business was done. Accordingly it entered into an arrangement with the defendant whereby the defendant, for a nominal premium, would issue to the Guaranty Corporation an indemnity agreement purporting to indemnify the Guaranty Corporation for loss resulting from the purchase of the accounts of a particular customer, but with the definite and clearly expressed understanding that the defendant would never in fact be held to any liability arising from the execution and delivery of the so-called fidelity bond. In furtherance of this plan, in January, 1924, the executive committee of the Guaranty Corporation, who, by virtue of its by-laws, were vested with the powers to direct and transact business of the corporation in the interim between the meetings of the board of directors, passed a resolution which read as follows:

"(a) Whereas, this corporation has applied to the Maryland Casualty Company to execute bonds on behalf of its customers, who are now or who may hereafter collect accounts, notes, etc., purchased by this corporation from time to time from such customers;

"(b) Whereas, this corporation desires such bonds to be executed for the moral effect alone, and does not intend to hold said Maryland Casualty Company thereon; and

"(c) Whereas, the said Maryland Casualty Company has consented to execute such bonds upon the express condition that this corporation execute a waiver of liability agreement:

"Now, therefore, be it resolved that the officers be and they are hereby authorized to enter into an agreement with the Maryland Casualty Company, a corporation of the state of Maryland, in terms satisfactory to said company, whereby this corporation agrees to waive any one or more of the obligations contained in any bond hereafter executed by the said Maryland Casualty Company in favor of this corporation, on behalf of any such customer of this corporation. All other bonds issued in favor of this corporation are in no way affected by this agreement."

This resolution was ratified by the directors at a meeting held February 3, 1924, and under date of February 28, 1924, a written agreement was entered into between the Guaranty Corporation and the defendant, which recited, among other things, that the Guaranty Corporation, for the general benefit of its business, had applied for fidelity bonds,

the sole and only purpose of which was for the effect alone which the said bonds would have in promoting the honesty and integrity of the customers in business transactions with the Guaranty Corporation arising out of the purchase of accounts, and that the defendant refused to consider the execution of any such form of bond except upon the express condition that it should not become liable thereon to the Guaranty Corporation for any loss suffered by the latter by reason of the defaults of, or breach of, the bond conditions by the customer bonded, regardless of the provisions of the bond, which should be applied for and executed.

The agreement contained the further recital:

"Whereas, the party of the second part has agreed to accept such bonds under said conditions as above set forth, feeling that the existence of the bond, even though no recovery can be had thereunder, will be of great benefit to its business from the effect that it will have on the honesty and business integrity of any such 'customer,' thereby lessening its risk of loss."

The material stipulations to which the parties subscribed in said written agreement were that every bond applied for by Guaranty Corporation, and executed by the defendant on behalf of any customer, should be subject in all respects to the terms of the agreement and all amendments thereof.

The defendant agreed, upon receipt of notice, to take reasonable steps to recover any loss which the Guaranty Corporation should sustain by reason of default of any customer on behalf of whom the bond was written; it being expressly understood that this obligation to recover any such loss for the benefit of the Guaranty Corporation was the sole and only obligation assumed by the defendant under any such bond executed, regardless of the provisions therein contained.

It was further stipulated that every application for bond should be accompanied by letter of the Guaranty Corporation to the effect that the bond applied for would be subject in all respects to the provisions of the agreement.

The twelfth paragraph of the agreement was as follows:

"That each and every agreement in any one of such bonds contrary to the provisions hereof, and imposing any greater liability upon the party of the first part than herein provided for and assumed, shall be in all respects and the same are hereby superseded by the provisions of this agreement."

On the 5th day of May, 1925, the Guaranty Corporation wrote to the defendant the following letter:

"Kindly issue a bond in our favor in the amount of $15,000.00 to date from May 13, 1925, and to expire May 13, 1926, on behalf of the Allen Fire Department Supply Company, 159 Aborn street, Providence, Rhode Island, from whom we will purchase, from time to time, open accounts, notes, etc., leaving same to be collected for us by said firm.

"It is understood that this bond shall be governed by and shall be subject in all respects to the terms and conditions of a certain written agreement entered into between this company and the Maryland Casualty Company, dated the 28th day of February, 1924, concerning the execution of such bonds."

On May 12, 1924, the bankrupt entered into one of its regular agreements with the Allen Fire Department Supply Company (hereinafter referred to as the Supply Company), by the terms of which the bankrupt agreed to buy from the Supply Company accounts receivable, paying therefor 77 per cent. of the face value at the time of purchase and the remaining 23 per cent., minus charges, when the accounts were paid in full, and in addition to other fees charged by the Guaranty Corporation the Supply Company was to pay $100 in payment of the premium on the bond in suit, which the defendant issued on May 13, 1925, in response to the request above noted.

By the terms of this bond, the defendant agreed to reimburse the Guaranty Corporation for any loss, not exceeding $15,000, through the sale, assignment, pledge, or transfer, under the agreement between the Supply Company and the Guaranty Corporation, during the term of the bond, of any accounts, notes, and choses in action wholly or partly fictitious.

From the evidence before me, which is uncontroverted, I find that the Supply Company assigned to the Guaranty Corporation, under its agreement with the bankrupt, certain accounts receivable which were partly fictitious. These assignments were all made during the life of the bond, and the loss resulting from the assignment of these fictitious accounts amounted in the aggregate to $5,845.22. This suit was seasonably brought after due proof of loss.

The only defense, upon which the defendant can rely, is that based upon the earlier agreement between it and the Guaranty Corporation pursuant to which the bond was issued.

There is no evidence before me that the

Guaranty Corporation ever notified the defendant of default on the part of the Supply Company. I do not understand this suit is brought to recover damages for nonperformance of the only obligation which, by the express terms of the agreement, was to be assumed by the defendant.

The plaintiff's contention rather is that, as trustee in bankruptcy, and as the representative of creditors, he has a right to insist upon the performance of the agreements expressed in the bond, without reference to the collateral agreement entered into between the Guaranty Corporation and the defendant, pursuant to the terms of which the bond was issued. In fact, it is urged that the defendant's liability must be determined wholly by the terms of the bond and evidence tending to limit, or deny, that liability is inadmissible.

The intention of the parties to the transaction is beyond any doubt. It was that the execution and delivery of the bond, absolute on its face, was never to become operative as a binding agreement to indemnify against loss.

The real question presented is whether evidence can be received to show this intention in a suit by a trustee in bankruptcy of the obligee. I can discover no principle of law that would entitle the trustee of the obligee to invoke the 1910 amendment to section 47a of the Bankruptcy Act (11 USCA § 75[a]), which provided that, as to property in his custody, he shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon. Jump v. Sparling, 218 Mass. 324, 105 N. E. 878.

[1] This case is one where the trustee stands in the shoes of the bankrupt. His rights under the indemnity agreement are not to be deemed greater than those of the bankrupt. We are brought, therefore, to the question whether, in a suit on the bond, brought by the Guaranty Corporation, it would be open to the defendant to show that it was the intention of the parties that no liability should be assumed by the execution and delivery of the instrument declared upon.

Obviously, the execution of the bond was but one step in the course of an entire transaction, made up of the agreement of February 28, 1924, the letter of May 5, 1925, and the bond in question. The bond was issued pursuant to the terms of the agreement and subject to the provisions thereof. It would seem to be manifestly unjust to allow one of the parties to the transaction to segregate a particular document, and insist

that its rights were to be governed wholly by that document and, by shutting out an opportunity to show the real situation, defeat the actual intention of the parties.

I am aware that the parol evidence rule is said to be more than a rule of evidence; that it is a rule of substantive law, and rests on the doctrine that, when parties have deliberately put their agreements in the form of a written contract, they shall not be allowed to show that the agreement was something else. Mears v. Smith, 199 Mass. 319, 85 N. E. 165. I should doubt very much, however, whether this rule would forbid the introduction of evidence tending to show that a writing was but a part of an entire contract between the parties.

[2] But there are other grounds upon which the right to show the real intent of the parties may be based. It is well established that the parol evidence rule does not preclude a party from showing that what, on its face, purported to be an agreement was not to operate as such. The distinction between evidence to vary the terms of an agreement and evidence to show that no agreement existed is clearly pointed out in Ware v. Allen, 128 U. S. 590, 9 S. Ct. 174, 32 L. Ed. 563, where Mr. Justice Miller collected the authorities in England and in this country to support the principle that a written instrument, delivered to the obligee, may be shown to have been delivered with the understanding that it would have no operation as a legal, binding agreement, except upon some condition that had not been fulfilled. See, to the same effect, Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 38 L. Ed. 698; Brady v. Kern (D. C.) 218 F. 862, affirmed in (C. C. A.) 222 F. 873.

[3] If it is competent for a defendant to show that his promise was to create a liability only upon the fulfillment of some condition a fortiori, it would be competent to show that the promise, under no condition whatever, was to give rise to liability.

Williston, in his work on Contracts, states that "the parol evidence rule does not apply to every contract of which there is written evidence, but 'only applies where the parties to an agreement reduce it to writing and agree or intend that that writing shall be their agreement.'" Section 633.

Here manifestly the parties did not intend that the bond should express their agreement. On the contrary, they expressly stipulated that their agreement should find expression in the written contract of February 28, 1924. If this agreement is to be given effect, it follows that the defendant

cannot be held liable for the loss sustained by plaintiff's bankrupt.

The plaintiff's requests for findings of fact are granted, except the eighth, and that I grant if the request is read to mean that the bond on its face purported to agree to reimburse the bankrupt for the loss referred to. If the eighth request is for a finding of fact that the defendant entered into a binding obligation to reimburse the bankrupt, the request is then denied.

Respecting plaintiff's requests for rulings of law, the first and second are granted. The remaining requests are denied.

The defendant has also filed certain requests for rulings and findings, which, with the exception of the eighth and ninth requests, are consistent with the foregoing and are allowed. The eighth and ninth are denied.

Judgment for the defendant.