## WARE *v.* ALLEN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

No. 99. Argued November 28, December 3, 1888.—Decided December 17, 1888.

On the proofs the court holds that the contract upon which this suit is brought never went into effect; that the condition upon which it was to become operative never occurred; and that the case is one of that class, well recognized in the law, by which an instrument, whether delivered to a third person as an escrow, or to the obligee in it, is made to depend, as to its going into operation, upon events to occur or to be ascertained thereafter.

Parol evidence is admissible, in an action between the parties, to show that a written instrument, executed and delivered by the party obligor to the party obligee, absolute on its face, was conditional and was not intended to take effect until another event should take place.

IN EQUITY. Decree dismissing the bill. Complainant appealed. The case is stated in the opinion.

Mr. *Calderon Carlisle*, with whom was Mr. *Marcellus Green*, for appellant, on the point that parol evidence was not admissible to explain the instrument which formed the subject of controversy, contended as follows:

This defence is wholly inadmissible as a matter of law.

The condition stipulated in the written agreement is plain and unequivocal: "*Provided we are not defeated in the suit against T. P. Ware.*" This note was not written by the complainant, but by defendants' clerk, Reynolds, and was the result of a discussion between complainant and defendant, J. H. Allen, in which a different paper had been offered, and after W. P. Ware "made objections to same to J. H. Allen," and Reynolds further testifies that it was according to an arrangement between Ware and J. H. Allen, and that he "wrote it according to directions of J. H. Allen."

It is therefore conclusively shown, for Reynolds is in no way contradicted or impeached, that this instrument was deliberately prepared by the defendant, J. H. Allen, after nearly a day's conference with Ware, and that the form in which it now appears is the form which said defendant took to express his views of the agreement at which the parties had arrived. Defendant Allen confirms this account of the preparation of the paper, except that he says it was "hurriedly written." But it appears from Goldthwaite's evidence that sufficient deliberation was used in its preparation to *keep a copy* of the agreement which was shown him by defendant Allen. The purpose of this defence by parol proof is to vary, contradict, qualify and add to the terms of the written instrument. The condition of the note expressed is defeat in a suit; the condition alleged and intended to be proved is the opinion of an attorney as to the safety of a given transaction; a given mode of procedure. The rule against the admission of such testimony is too well settled and too well understood to admit of argument, and, as has been said in a late decision, "cannot now be considered an open one in this court." *Martin v. Cole,* 104 U. S. 30, 39; *Bank of the United States v. Dunn,* 6 Pet. 51; *Brown v. Wiley,* 20 How. 442; *Bank of the Metropolis v. Jones,* 8 Pet. 12; *Forsythe v. Kimball,* 91 U. S. 291; *Bast v. Bank,* 101 U. S. 93, 96, 97; *Insurance Co. v. Mowry,* 96 U. S. 544, 547.

The fact that this was a suit in equity does not vary the rule; for, as has been said by this court, "in the absence of

fraud, accident or mistake, the rule is the same in equity as at law." *Forsythe* v. *Kimball,* 91 U. S. 264; *Martin* v. *Cole,* 104 U. S. 34.

*Mr. J. M. Allen* for appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from the Circuit Court of the United States for the Southern District of Mississippi.

The suit was originally commenced in the Chancery Court of Copiah County, in that State, and its equity jurisdiction was based upon a statute of Mississippi authorizing attachments to be issued out of the Courts of Chancery. The case was removed into the Circuit Court of the United States by reason of the diverse citizenship of the parties, and no question was made in that court with regard to the right to proceed in it as a case in equity.

W. P. Ware was the plaintiff below, and from a decree dismissing his bill he has taken this appeal. The action was brought upon a written instrument, of which the following is a copy:

"NEW ORLEANS, *Nov. 7th,* 1881.

"Ninety days after date we promise to pay W. P. Ware or order ten thousand dollars for two notes of T. P. Ware for five thousand dollars each, dated August 21, '81, one on demand and one at 30 days, provided we are not defeated in the suit against T. P. Ware; if so, this note is void.

"Yours truly,

"(Signed)　　　　　　　ALLEN, WEST & BUSH."

The pleadings and the evidence present, without much contradiction, the following leading facts: It appears that T. P. Ware, a brother of the appellant, W. P. Ware, was conducting a mercantile business at Hazlehurst, in the State of Mississippi, and in the course thereof had extensive dealings with the firm of Allen, West & Bush, a mercantile house in the city of New Orleans, by which he became indebted to them at the

date of the above paper in the sum of about eighteen thousand dollars. The business of T. P. Ware was conducted almost entirely by his brother, the plaintiff in this action, and was so embarrassed that the debts could not be paid. It would also appear from the testimony that W. P. Ware had, a year or two before, conducted an unsuccessful business at the same place, in his own name, and, being likely to fail, or having become insolvent, had sold out his store and goods to T. P. Ware, his brother, but as agent, for the latter ostensibly, continued to manage or control the business which was thereafter carried on at the same stand in the name of T. P. Ware.

In this condition of affairs, W. P. Ware made a visit to Allen, West & Bush, at New Orleans, and had several interviews with them there, during which time the instrument now sued upon was executed. He stated to that firm, in the course of those interviews, that his brother was unable to pay his debts, and that his creditors were becoming impatient; that he himself held two notes made by his brother, for $5000 each, amounting to $10,000, and that he desired defendants to initiate proceedings to attach the goods of T. P. Ware, or to obtain from him an assignment or mortgage which would secure their debt as well as his own. For that purpose he proposed to assign over to them the two notes which he held against his brother, T. P. Ware, taking their obligation to pay him the amount. The defendants were disinclined to enter upon this course of proceeding, stating that they did not know of any cause for which an attachment could be issued or which would justify them in seizing the property of their debtor. The plaintiff replied that he would furnish them with cause for such attachment if they would enter into the arrangement which he proposed, that is to say, that he would show them sufficient reason for the seizing of the property by an attachment. The defendants again expressed their doubt about the success of such a course, but said they would like to consult Judge Harris, who lived in Mississippi, and also their counsel, J. M. Allen. Mr. Ware seemed impatient of this delay, as there was danger that somebody else might attach the property and thus defeat both of their claims; and finally,

under his pressure, the notes of T. P. Ware were transferred to the defendant firm, and they gave the instrument upon which this suit is brought.

The testimony is ample to show that before the paper was signed or agreed upon, it was distinctly understood that it was to be of no effect unless, upon consultation with Judge Harris or J. M. Allen, or both of them, the defendants were assured that the proceeding was lawful and the attachment for the full amount of both claims could be enforced. It is very true that the plaintiff does not agree to this, in the full extent in which it is thus stated by at least two or three witnesses, but all the circumstances go to confirm the truth of this statement of what actually occurred.

As soon as the defendants could do so they asked the opinion of Judge Harris upon the safety of the proposed transaction, and he declined, for reasons growing out of his relationship to Mr. Ware, to give any opinion upon the subject, or to take any part in the matter. The other counsel for the defendants, Mr. Allen, upon whose approval the transaction was to be binding, emphatically disapproved of it, and advised the defendant firm to have nothing to do with it, or with the notes of W. P. Ware against his brother, in any proceedings which they might take to collect their own claim.

Accordingly the defendants, after some delay, instituted a suit in attachment against T. P. Ware and seized the goods at Hazlehurst. The amount then sued for was their own debt and no more, to wit, a little over eighteen thousand dollars. This proceeding went on in the usual manner and resulted in a recovery, by Allen, West & Bush, of their debt, or the most of it. It also appears that W. P. Ware was promptly notified of the fact that the firm declined to proceed in the manner he had suggested.

These transactions took place in the autumn of 1881, shortly after the execution of the paper sued on here, which matured, according to its terms, on the 7th day of February, 1882. The present suit was commenced in February, 1883.

The transaction by which W. P. Ware, who was the acting manager of the affairs of his brother, undertook to secure a

large sum out of the remnants of the second failure of that concern, whether it was really owned by W. P. or T. P. Ware, by having that brother give him two notes, one falling due on demand and the other thirty days after date, amounting to $10,000, and by inducing Allen, West & Bush, who had a large *bona fide* claim against the failing concern, to take these two notes and put them in with their own, and by his aid secure an attachment that would cover all the goods and secure the payment of the debts due to them both, does not commend itself to the conscience of a chancellor. It is bitterly assailed by the defendants as an unmitigated fraud on the part of the plaintiff, with the additional allegation that the failure of W. P. Ware and the sale made to his brother was a fraud also, of which the present transaction was intended to be a repetition.

We do not think it necessary to inquire further into the evidence brought to sustain this defence, for we are quite clear that the testimony does establish the agreement alleged by the defendants to have been made at the various interviews between the persons composing the firm of Allen, West & Bush, or some of them, and the plaintiff, at and before the time when they delivered to him the instrument sued on and received from him the two notes made by his brother, T. P. Ware; that the firm were to have an opportunity to consult counsel, upon whom they relied, as to the validity of the transaction; and that if such advice was adverse, then the instrument given by them was to be of no effect.

It also sufficiently appears that they were advised, without hesitation, by the counsel to whom they had reference in those conversations about the agreement, that the transaction was not one that would stand the test of a legal investigation. This is to be considered in connection with the fact that the firm only brought suit for their own claim, and have since returned, or offered to return, the notes of W. P. Ware, which were given him by his brother and delivered to them when the paper was executed.

We are of opinion that this evidence shows that the contract upon which this suit is brought never went into effect;

that the condition upon which it was to become operative never occurred, and that it is not a question of contradicting or varying a written instrument by parol testimony, but that it is one of that class of cases, well recognized in the law, by which an instrument, whether delivered to a third person as an escrow or to the obligee in it, is made to depend, as to its going into operation, upon events to occur or be ascertained thereafter.

The present case is almost identical in its circumstances with that of *Pym* v. *Campbell*, in the Court of Queen's Bench, 6 Ell. & Bl. 370, 373. The defendants in that case had signed an agreement for the purchase of an interest in an invention, which the evidence showed was executed with the understanding that it should not be a bargain until a certain engineer, who was to be consulted, should approve of the invention. There was a verdict for the defendants, which was sustained, and the following language was used by Erle, J., on discharging the rule to show cause : " I think that this rule ought to be discharged. The point made is that this is a written agreement, absolute on the face of it, and that evidence was admitted to show that it was conditional; and if that had been so, it would have been wrong. But I am of opinion that the evidence showed that in fact there was never any agreement at all. . . . If it be proved that in fact the paper was signed with the express intention that it should not be an agreement, the other party cannot fix it as an agreement upon those signing. The distinction in point of law is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is not an agreement at all is admissible."

In this view the other judges, including Lord Campbell, Chief Justice, concurred, holding that it having been explained to the plaintiff that the defendants did not intend the paper to be an agreement until the engineer had been consulted, and his approval obtained, and was signed only because it was not convenient for them to remain, it was therefore no agreement, the plaintiff having assented to this and received the writing on these terms.

The same principle was announced in the Court of Common Pleas in *Davis* v. *Jones*, 17 C. B. 625, in which the distinction is clearly stated by Chief Justice Jervis, between evidence which, although parol, shows the written agreement was not to take effect until certain other things were done, as that rent should not commence running till certain repairs were completed, (although the instrument was signed and delivered,) and evidence which contradicts or varies the meaning of the instrument itself. This is concurred in by Cresswell and Crowder, JJ.

Later, in 1861, in *Wallis* v. *Littell*, 11 C. B. (N. S.) 369, the same court laid down the same doctrine in regard to an assignment of a lease of a farm which had been made by a tenant to a third party, and the instrument delivered, but with an agreement that it should not take effect until the consent of the landlord was procured. The later refused his consent, and the court held the assignment of the lease, although executed and delivered, had never become operative.

This principle was acted upon, and these authorities cited and affirmed, in the case of *Wilson* v. *Powers*, 131 Mass. 539, as late as 1881.

The doctrine was asserted in this court as early as 1808, in the case of *Pawling* v. *United States*, 4 Cranch, 219, where it was held, in a suit upon a collector's bond, that the sureties who signed it could prove by parol evidence that they did so on an express agreement that they were not to be bound until other persons who were named became bound also by signing the bond.

Without farther examination of authorities, we are of opinion that the case before us comes within the principle asserted by those we have referred to, and the judgment of the Circuit Court is, therefore,

*Affirmed.*