ARCTURUS RADIO TUBE COMPANY, a corporation of the State of Delaware,

*vs.*

RADIO CORPORATION OF AMERICA, a corporation of the State of Delaware.

*New Castle, March 22, 1935.*

378

*Clarence A. Southerland,* of the firm of Ward & Gray, for complainant.

*Charles F. Curley,* for defendant.

THE CHANCELLOR: Before the hearing of testimony in this case was commenced, I raised the question of the court's jurisdiction. The defendant declined and has since declined to notice the query. Of course the complainant considers the jurisdiction exists. I have concluded that it does not.

1. The first ground on which the complainant relies as sufficient to support the jurisdiction is that of reformation of the contract. It is not pretended that the clause which the complainant seeks to eliminate from the contract is present therein as a result of fraud or mistake. Of course there is no question of accident. Both parties knew the clause was in the contract before it was executed. In fact the complainant refused at first to enter into the agreement unless the clause was eliminated. It claims that it finally accepted the clause on the parol representation by the defendant that the clause would not be enforced; that it was designed for the ulterior purpose of merely supplying the appearance of a burdensome obligation which the defendant, in case irresponsible parties should request from it a similar uniform license, might exhibit as an excuse for not granting the requested license. The clause was thus, the complainant claims, only "window-dressing" and it was so understood.

Granting *arguendo* this to be true, the fact remains that the so-called window-dressing was deliberately agreed upon by the parties. What right has the complainant now to ask that the defendant be deprived of the potential benefits which the alleged sham appearance of the clause is supposed to confer, benefits which the complainant know-

ingly and deliberately stipulated that the defendant might enjoy? The enforceability of the clause is one thing. Its elimination from the agreement is another. Where a party with full knowledge of what he is doing, without the inducement of fraud or the misapprehension caused by mutual mistake, enters into a contract, whatever may be his other rights of relief, he is not entitled to the relief of reformation. *Albert Co., Inc., v. Newtown Creek Realty Corp.*, 211 *App. Div.* 1, 206 *N. Y. S.* 670.

The bill cannot therefore be sustained on the ground of reformation.

2. Can the complainant be permitted to show by parol evidence that the clause of the written contract was agreed by the parties not to be binding? This question was argued at length. It is a question which goes to the terms of the contract. Is the writing the exclusive evidence of the contract's terms, or may the writing be supplemented by parol evidence, and the terms of the contract be extracted from both the written agreement and the parol understanding? The complainant contends that the parol agreement is properly receivable in evidence as a separate and distinct agreement because it is one that shows that a part of the written contract, viz., the clause in question, was never a contract between the parties. Thus the case is one that falls within the principle, says the complainant, of the case in the Superior Court of this State of *Gluckman v. Gross,* New Castle County, in which judgment was refused upon an affidavit of demand, where the affidavit of defense averred that the promissory note sued upon was never intended to be a binding obligation and was given by the defendant to his mother for the sole purpose that she might display it to other members of her family as an explanation of why she had delivered two thousand dollars to the defendant, her son. The complainant cites many cases from other jurisdictions to like effect. All of them, however, except one, are cases, as I read them, where the parol

agreement attacks the existence as a binding contract of the entire writing. This is a case similar to *Jefferis v. Wm. D. Mullen Co.*, 15 *Del. Ch.* 9, 130 *A.* 39, where a binding written agreement is admitted and the parol evidence is introduced for the purpose of showing that one of its terms is not binding. The complainant contends that no distinction is to be drawn on that score. That the complainant is correct in that contention, I am of the opinion is to be punctuated with a question mark. It has been said that, "the distinction in point of law is that evidence to vary the terms of an agreement in writing is not admissible, but evidence to show that there is not an agreement at all is admissible." *Pym v. Campbell*, 6 *El. & Bl.* 374, cited with approval in *Southern Street-Ry. Advertising Co. v. Metropole, etc., Co.*, 91 *Md.* 61, 46 *A.* 513. See, also, *Ware v. Allen*, 128 *U. S.* 590, 9 *S. Ct.* 174, 32 *L. Ed.* 563; *Wilson v. Powers*, 131 *Mass.* 539; *Greeley v. Greeley*, 119 *Me.* 264, 110 *A.* 637. But the question of whether this distinction is applicable here is one, in the view I take of the case, which it becomes unnecessary for me to pass upon.

Let the answer to the question be in favor of the complainant's contention, it is nevertheless conceded by the complainant that the parol evidence is equally admissible by way of defense in the New Jersey law action as it is by way of affirmative relief in this court. Why, then, has not the complainant a sufficient remedy at law? Under the settled rule in this court, he has. *Gray Co. v. Alemite Corp.*, ante *p.* 244, 174 *A.* 136; *Pefkaros v. Harman*, ante *p.* 238, 174 *A.* 124; *White, et al., v. Osserman, et al.*, 16 *Del. Ch.* 39, 139 *A.* 761; *DiLuchio v. Otis Oil Burner Corp.*, 15 *Del. Ch.* 229, 135 *A.* 482.

3. But, it is said, the facts in evidence show a situation out of which arises an equitable estoppel in the complainant's favor against the right of the defendant to assert a right of recovery in an action based on the questioned clause. The facts upon which the complainant relies to sup-

port this theory are claimed by it to be as follows: (a) The defendant, prior to September, 1931, when the agreement was made with the complainant, had entered into uniform license agreements similar to the one here under examination with other parties containing the same minimum royalty clause; but the defendant advised the complainant the clause had never been enforced. Thus the defendant, says the complainant, had established a practice or custom of non-enforcement with respect to the minimum royalty clause which it is estopped from repudiating. (b) When the defendant sued the complainant in the first New Jersey action in 1933, its claim was asserted under the five per cent. clause for an amount which, even if the defendant's claim was allowed in full, would be less than fifty thousand dollars, a circumstance, says the complainant, which was calculated to lead the complainant to believe that the defendant was not treating the minimum royalty clause as an enforceable one. (c) Having the foregoing facts in hand, the complainant exercised its option to extend the license agreement for a further five year period, a step which it never would have taken but for the belief that the claim in question would not be enforced against it. (d) The defendant, through its negotiating spokesman, expressly agreed that the clause was not to be a binding one.

The defendant admits as to (a) that it had not enforced the clause against its licensees in 1930 and 1931, the only years during which the clause was to be found in its uniform license agreements with others for the manufacture and sale of radio tubes. It has shown, however, that its action in this respect was in obedience to a formal resolution of waiver adopted by its board of directors and communicated to each existing licensee with explicit notice that "this waiver does not and shall not be deemed to apply to any other year." I do not see how any established practice or custom of obligatory waivers prior to 1931 can be

drawn from those facts. It would seem to be going far to say that the act of a creditor in waiving his claim to one annually recurring charge estops him from asserting subsequent ones. That the law does not thus perpetuate a creditor's generosity would seem to be too plain for discussion.

As to (b), if the defendant had the right to sue the complainant on the basis of the minimum royalty clause and also had the right to sue on the five per cent. basis, I am unable to understand why its option to proceed on the latter basis could be exercised only upon the penalty of waiving forever thereafter its rights under the former.

As to (c), while the complainant may have thought that the first New Jersey action for recovery under the five per cent. clause indicated that the defendant was not proposing to demand payment for 1932 under the minimum royalty clause, yet it is very seriously to be questioned that the complainant had the right to conclude that for that reason the defendant regarded the clause as a non-enforceable one. This is especially so when it is remembered that the complainant had been advised early in 1932 by the defendant of a proposal to revise the royalty rate and to reduce the minimum royalty figure from fifty thousand dollars to ten thousand dollars if the new rate was accepted. That proposition hardly harmonizes with the suggestion that the minimum royalty figure of fifty thousand dollars was treated by the defendant as "window-dressing." Was not the complainant, in the face of that proposition, put upon inquiry as to its alleged understanding that the questioned clause was not an enforceable one? It made no inquiry. It went ahead later and extended the agreement.

As to (d), the contention in that connection goes to the point of whether the clause was intended to be a binding term of the contract. The core of this case it seems to me lies right at this point, viz., did the defendant agree that the clause was not to be an obligatory one? If it was an obligatory one, the defendant has done nothing by way of

estoppel to destroy it. If it was not an obligatory one, then the complainant is not bound by it—not because of any principle of estoppel, but because the parties agreed it should not be binding.

And so the question comes down to the one of fact, whether the clause was agreed upon by the parties as an obligatory term of their contract. Now that question, as before pointed out, is one which the complainant concedes can be litigated by the complainant by way of defense to the New Jersey law action. If so, the complainant has a sufficient remedy at law.

The bill should therefore be dismissed, without prejudice to the complainant's right to set up as a defense in the law suit the matters which it here seeks to establish as a ground of relief, and the restraining order heretofore issued should be dissolved and vacated.

Let a decree be prepared in accordance with the foregoing.