GOOD, APPELLEE, *v.* ROBINSON, APPELLANT.

(No. 176—Decided February 25, 1949.)

*Mr. S. S. Beard,* for appellee.

*Messrs. Myers & Myers* and *Mr. Robert D. TouVelle,* for appellant.

GUERNSEY, P. J.  This is an appeal on questions of law from a judgment of the Common Pleas Court of Van Wert county, in an action wherein the appellee,

Paul L. Good, was plaintiff, and the appellant, Della Robinson, was defendant.

The action is one for specific performance of an agreement entered into between the parties for the sale of certain real estate by defendant to plaintiff, and for damages for delay in performance.

On the trial in the Common Pleas Court judgment was rendered in favor of plaintiff decreeing specific performance of the agreement upon which the action is based, and awarding $500 as damages to plaintiff for defendant's delay in performance. That is the judgment from which this appeal is taken.

In his petition the plaintiff, for his first cause of action against the defendant, makes the following averments:

On or about the 29th day of May 1946, Wellington N. Robinson, husband of the defendant, died testate seized in fee simple of the real estate in the petition described, which is the real estate described in the contract upon which this action is based.

Thereafter, defendant filed an application in the Probate Court of Van Wert county, asking that the will and codicil of Wellington N. Robinson be admitted to probate, and the will and codicil were admitted to probate on the 13th day of June 1946.

Thereafter, William Fostnaught was duly appointed as executor of the last will and testament of Wellington N. Robinson, deceased, and is still acting as such executor.

The executor caused an inventory and appraisement of the estate to be made and duly filed the same with the Probate Court of Van Wert county, which inventory and appraisement was duly approved by the court.

Wellington N. Robinson was the owner of the tracts

of real estate which are particularly described in the petition, situated in the township of Liberty, county of Van Wert and state of Ohio, and together contain 240 acres.

The aforesaid real estate was appraised by the appraisers of the estate at the sum of $48,000, and thereafter the executor filed an application for reappraisement of the premises and the premises were again appraised at the sum of $48,000, which appraisal was approved by the Probate Court.

On or about the 16th day of August 1946, the defendant made, executed and delivered to plaintiff a contract in writing, a copy of which is attached to the petition, marked exhibit A, and made a part thereof the same as if fully written therein.

By the terms of the contract the defendant agreed to sell the real estate described in the petition and plaintiff agreed to buy the real estate, subject to the terms contained in the contract.

The contract was contingent upon the defendant obtaining her approval of an election to take the aforesaid property at its appraised value by the Probate Court of Van Wert county.

Pursuant to the terms of the agreement, the defendant, on the 3rd day of January 1947, filed her election in the Probate Court of Van Wert county, praying for authority to purchase the real estate described in the petition at its appraised value; and thereafter on the 5th day of February 1947, the Probate Court of Van Wert county, granted the prayer of the petition and ordered William Fostnaught, executor of the last will and testament of Wellington N. Robinson, deceased, to sell and convey the real estate hereinbefore described to the defendant therein, and the executor thereafter complied with the order of the

court and executed, acknowledged and delivered to the defendant, a deed for the aforesaid premises.

By reason thereof defendant is now in position to comply with the terms of her contract with the plaintiff.

The defendant notwithstanding the aforesaid contract has notified the plaintiff that she will not comply with the terms of the contract and on the 10th day of February 1947, she tendered a return of the check given as a down payment on the real estate as stipulated in the contract which the plaintiff refused to accept; on the 11th day of February 1947, the defendant again notified plaintiff, through her attorney B. A. Myers of Celina, Ohio, that she would not make and execute a deed conveying the real estate as provided for in the contract.

By reason of the absolute and unconditional refusal of the defendant to proceed with the contract plaintiff has not made a tender of the balance of the purchase price due on the real estate described in the contract.

Plaintiff is now and has at all times since the signing of the contract been ready, willing and able to perform the conditions of the contract as therein provided for, and now brings into court and tenders to the defendant the balance of the aforesaid purchase price required of him to be paid by the terms of the contract and hereby tenders performance of each and all of the covenants and conditions of the contract required of him to be performed.

As an inducement for the defendant to sign the contract he offered to pay an additional sum of $500 which sum he likewise brings into court and tenders the same to the defendant.

On the 24th day of February 1947, the defendant executed, acknowledged and delivered to The Peoples

Savings Bank of Van Wert, Ohio, a mortgage deed for the purpose of securing an indebtedness of $21,000, payable on or before one year after date, which mortgage is filed in volume 112, page 586 of the mortgage records of Van Wert county.

The price agreed to be paid for the premises, at the time the contract was executed and now, is the fair cash market value of the premises.

Plaintiff pleaded a second cause of action for damages in his petition, but later filed a supplemental petition covering the subject matter of the second cause of action and before any evidence was submitted in the cause in the Common Pleas Court, elected to stand on the cause of action for damages pleaded in the supplemental petition rather than the second cause of action pleaded in the petition, and waived his right to proceed on the second cause of action pleaded in the petition. Consequently we will not set forth the allegations contained in the second cause of action.

In his petition, the plaintiff prays that the defendant may be ordered to perform the terms of the contract and execute and deliver to the plaintiff her deed of general warranty for the premises described in the petition; that she may be required to give immediate possession of the premises to plaintiff; that the court may order a sufficient amount out of the proceeds of the sale paid into this court by the plaintiff paid to The Peoples Savings Bank of Van Wert, Ohio, in order to obtain the release and cancellation of its mortgage on the premises; that plaintiff may recover damages against defendant in the sum of $10,000 for her failure to deliver the possession of the premises on the 1st day of March 1947, and for such other and further relief as equity and the nature of the case may require.

The agreement referred to in the petition, and attached thereto as exhibit A, is in the words and figures following, to wit:

"Agreement.

"This agreement entered into at Van Wert, Ohio, this 16th day of August, 1946, by and between Della Robinson, hereinafter referred to as the seller, and Paul L. Good, hereinafter referred to as the buyer, witnesseth:

"Said seller in consideration of the sum of one hundred ($100) dollars in hand paid, the receipt of which is hereby acknowledged, and of the promises and agreements of said buyer hereinafter contained, does for herself, her heirs, executors, administrators and assigns, hereby agree to sell to said buyer, his heirs and assigns, the following described real estate situate in the township of Liberty, county of Van Wert, and state of Ohio, to wit:

"The west half of the southeast quarter of section nine, town three south, range two east, subject to Ohio Power easement recorded in vol. 127, page 439, also subject to Western Farm Bureau Electric easement recorded in vol. 139, page 219.

"Also the southwest quarter of section nine, town three south, range two east, subject to Ohio Power Company easement recorded in vol. 127, page 439 and Oil Lease (L. 21, P. 584) in favor of J. O. Yahn and C M. Purmort, containing in all 240 acres.

"Exclusive of all growing crops now on said premises which are under the control of William Fostnaught, executor of the estate of Wellington N. Robinson, deceased.

"Said buyer agrees to purchase said property for the sum of fifty-one thousand six hundred ($51,600) dollars, payable as follows: The sum of one hundred

($100) this day paid shall be applied on the purchase price and the sum of fifty-one thousand five hundred ($51,500) shall be paid within thirty (30) days after said seller notifies said buyer that the Probate Court of Van Wert county has approved her election to take the above described premises and after the executor has given to said seller a good and sufficient deed for same.

"Said seller agrees to give possession of the said property on or before March 1, 1947, said property being subject to a crop lease now in existence until said time and upon payment of the amounts referred to above and shall deliver to said buyer, his heirs or assigns a good and sufficient warranty deed for said premises.

"It is mutually agreed that the buyer shall be liable for all taxes and assessments starting with the year of 1947 and all subsequent years.

"It is mutually agreed that this contract is continued upon the Probate Court of Van Wert county, Ohio approving the election of seller to take the property herein described at its appraised value in the estate of Wellington N. Robinson, deceased.

"It is further agreed that should said court not approve said election that seller not be permitted to take said premises, that this contract shall be null and void and seller shall return to buyer the $100 paid hereunder.

"Witness our hands at Van Wert, Ohio, this 16th day of August, 1946.

> "Della Robinson
> "Seller
> "Paul L. Good
> "Buyer."

In her answer to the petition the defendant for her

answer to plaintiff's first cause of action makes the following admissions and averments:

She admits the following allegations set out in the first cause of action of plaintiff's petition:

The facts stated in paragraphs 1, 2 and 3 on the first page of plaintiff's petition.

Defendant further admits that Wellington N. Robinson, deceased, was the owner of the real estate described in the petition, consisting of 240 acres of land as set out in the first paragraph of plaintiff's petition on page 2 thereof. Defendant further admits that such tract of real estate was appraised by the appraisers of the estate in the original inventory and appraisement at the sum of $48,000.

Defendant further admits that thereafter the executor, William Fostnaught, filed an application for a reappraisement of the tract of real estate and that the premises were reappraised at the sum of $48,000, which appraisal was approved by the Probate Court.

The defendant by way of answer further says that on or about August 16, 1946, a contract was prepared and signed by her and the plaintiff, but specifically denies that the contract was delivered by her to plaintiff, and further denies that the contract was fully consummated at such time. Defendant also specifically denies that the $100 cash payment referred to in the contract was delivered to or accepted by her.

Defendant further, by way of answer, says:

After William Fostnaught was appointed and qualified as executor of the last will and testament of Wellington N. Robinson, deceased, he did within the time prescribed by law have an appraisement made pursuant to an order of the Probate Court which was duly filed with the court. Within the time prescribed by law defendant filed a petition to purchase the land referred to herein and an additional tract of land con-

taining 40 acres and appraised at $6,000, claiming the right to purchase the land as surviving spouse of the decedent as provided by the law of Ohio. Her petition to purchase was filed prior to August 16, 1946, the date of the alleged written contract referred to in plaintiff's petition herein. The Probate Court at the time of the signing of the alleged contract referred to by plaintiff herein, had not acted upon defendant's petition to purchase or approved her petition to purchase. The alleged contract referred to in plaintiff's petition herein had a clause therein written providing as follows:

"It is mutually agreed that this contract is continued (contingent) upon the Probate Court of Van Wert county, Ohio approving the election of seller to take the property herein described at its appraised value in the estate of Wellington N. Robinson, deceased."

After she had signed the alleged contract referred to in plaintiff's petition, to wit, on or about the 31st day of October 1946, William Fostnaught, executor of the estate of Wellington N. Robinson, deceased, filed an answer in the Probate Court to this defendant's petition to purchase the real estate of the deceased, objecting to defendant's petition and prayed:

"That the petition of the defendant be denied for the reason that the lands in the petition described constitute more than the mansion house and the lands adjacent thereto and used in conjunction therewith; that said lands constitute more than one-third of the gross value of said estate; that the appraisement is so manifestly inadequate that sale at such price would unconscionably prejudice the rights of defendants, and asks that said premises be reappraised, and for all proper relief."

Thereafter the Probate Court of Van Wert county

denied the defendant's petition to purchase upon the ground that the real estate described in the petition to purchase, consisting of two tracts, was in excess of that prescribed by law, which the surviving spouse would be authorized to take or purchase under the law. Further the court held that the appraisement was inadequate and ordered a new appraisement of the real estate. Pursuant to that order, a new appraisement was made and notice was given this answering defendant of the new appraisement.

On August 16, 1946, the day the alleged contract referred to in plaintiff's petition was signed by her, there was an additional verbal understanding between the plaintiff and defendant, to which no reference was made in the written contract and which was offered by the plaintiff as an inducement to the defendant to sign the contract, that plaintiff would pay to the defendant a sum in addition to the consideration set out in the alleged written contract, of $500, which sum was to have been paid in cash on such date. Plaintiff did not pay the sum or offer to pay the sum until several weeks thereafter and not until the defendant had advised the plaintiff that she would not accept the contract and would not deliver him the deed for the lands.

On Monday, August 20th, after the defendant had conferred with her attorney, Kerns Wright, she went to the plaintiff's home and advised the wife of plaintiff that she would not accept the contract which had been signed, but to her knowledge had not been delivered. Plaintiff's wife advised the defendant that she would promptly advise the plaintiff of this fact, the plaintiff being away from the city of Van Wert in connection with his business.

A short time thereafter, the exact date being unknown to the defendant, she directly advised the

plaintiff that she was not going to accept the contract or the $500, which plaintiff had proposed to pay her.

Defendant admits that on the 3rd day of January 1947, she again filed a petition to purchase the 240-acre tract of land referred to. On the 5th day of February, the Probate Court of Van Wert county, approved her petition to purchase.

Defendant further admits that on the 10th day of February 1947, she instructed Mr. Kerns Wright, who held in his office, the alleged contract and check for $100 from and after August 16, 1946, to return the check to plaintiff and in this connection she alleges and says as a fact that she had never received or accepted the contract or check or removed the same from the office of Kerns Wright.

Defendant further alleges and says that the plaintiff picked up a copy of the alleged contract from the desk in the office of Kerns Wright, attorney, after the same had been signed by her, without any authority from her and took the same with him at the time he left the office, upon the representation that he was going to get the $500 additional cash which he had offered the defendant, or was offering the defendant as an inducement to sign the alleged contract.

Defendant further says that because of the facts, allegations and statements hereinabove set out in her answer, the alleged contract upon which the plaintiff bases his claim herein, was not delivered, was not fully consummated, was secured by him fraudulently and without any legal agreement upon her part.

The prayer of the answer is that plaintiff's petition be dismissed, and that plaintiff's first cause of action as set out in plaintiff's petition be dismissed, and for her costs.

In his reply to the answer of the defendant, the

plaintiff makes the following admissions and averments:

He admits that . William Fostnaught was duly appointed and qualified as executor of the last will and testament of Wellington N. Robinson, deceased, and that he had an inventory and appraisement made pursuant to an order of the Probate Court which was duly filed with the court, and avers that the same was approved by the court, and that the defendant filed a. petition to purchase the land referred to in the petition herein, together with an additional tract of land containing 40 acres of land which was appraised at $6,000.

Plaintiff avers, however, that the defendant well knew that the additional 40 acres of land was not adjacent to the mansion house located on the premises described in the petition, and well knew that she had no right to elect to take the additional tract of land at the appraised value.

Plaintiff further admits that defendant's petition was filed prior to August 16, 1946, and that the Probate Court at the time of the signing of the contract referred to in plaintiff's petition had not acted upon the petition to purchase at the appraised value.

He further admits that the contract contained the provision quoted in defendant's answer.

Plaintiff further admits that on or about the 31st day of October 1946, William Fostnaught, as executor of the estate of Wellington N. Robinson, deceased, filed an answer objecting to defendant's petition as alleged in the answer.

Plaintiff further admits that thereafter the Probate Court denied defendant's petition to purchase for the reasons set forth in defendant's answer and that a new order of appraisement was made.

Plaintiff further admits that on the 16th day of

August 1946, at the time of the execution and delivery of the contract referred to in the plaintiff's petition, there was an additional verbal understanding between the defendant and this plaintiff by the terms of which this plaintiff agreed to pay defendant $500 in addition to the amount stipulated in the contract. Plaintiff denies, however, that such sum was to be paid in cash on such date.

Plaintiff for further reply to the answer of the defendant says that he denies each and every, all and singular, the allegations therein contained, except such allegations as have hereinbefore been specifically admitted to be true.

Plaintiff for further reply to the answer of defendant specifically denies that he picked up a copy of the contract in the office of Kerns Wright, an attorney at law, without any authority from her and took the same with him at the time he left the office upon the representation that he was going to get the $500 additional cash which he had offered the defendant.

His prayer for relief is the same as in the petition.

Plaintiff thereafter filed his supplemental petition. In his supplemental petition he adopts all the allegations and averments contained in the original petition and makes them a part thereof the same as if fully written out therein.

In his supplemental petition he avers that he has been deprived of the income from and the use of the premises described in the original petition, since the 1st day of March 1947; that by reason thereof he has suffered additional damages in the amount of $6,000; and that defendant has harvested the crops grown on the premises, to all of which the plaintiff was entitled under the terms of his contract heretofore set out in his original petition herein.

The prayer is for additional damages in the sum of $6,000 in addition to the relief prayed for in his original petition herein.

Defendant then filed her answer to the reply, and answer to the supplemental petition.

In her answer to the reply she makes the following averments:

The petition to purchase the 240-acre tract and the additional 40-acre tract was prepared by attorneys and that she relied absolutely upon their ability and experience in connection with the filing of the petition. She was in good faith and had no knowledge of the law.

The petition to purchase was a matter of record and the plaintiff had full access thereto. The matter was discussed in their negotiations and in connection with the proposition made by the plaintiff to her to purchase the 240-acre tract and by reason thereof the plaintiff was charged or should be charged with full knowledge thereof. Because of the facts stated in plaintiff's answer and facts herein set out, the proposed contract relied upon by the plaintiff and the signing thereof by the defendant was unjust, inequitable and fraudulent and should not be binding upon the defendant.

In defendant's answer to the supplemental petition the defendant reiterates and alleges as fully as if written herein the facts set out in her answer and the facts set out in her answer to the plaintiff's reply and by reason thereof denies that the plaintiff has been damaged as claimed in any sum whatsoever and further says that there was in fact no contract as the basis therefor.

She prays that plaintiff's petition be dismissed, and for her costs.

The pertinent facts in evidence, as shown by the record, are as follows:

Testimony of the defendant Della Robinson, called by the plaintiff as a witness for cross-examination by him:

That at the time the alleged agreement was signed, the parties knew that defendant did not have title to the real estate in question and that she could not convey the same to plaintiff, or to anyone, unless the election which was then pending in the Probate Court was allowed; that the parties were dealing solely on the basis of the allowance of the election that was then pending and discussed the fact that the election covered not only the 240 acres in question, but also an additional tract of 40 acres not described in the petition and not included in the alleged agreement. That it was for this reason that the alleged contract was made contingent upon the allowance of the pending petition, and defendant securing title to the 40 acres as well as the premises involved in this suit.

That plaintiff proposed to pay $500 in cash to defendant in addition to the consideration stated in the written agreement, to charge the amount of his personal expenses and that defendant could conceal the receipt thereof and that thereby both parties could evade income tax liability for such amount.

That the defendant stated that she would not accept the proposal until it had been submitted to her attorney, particularly the secret payment of $500, and that although the written papers were signed, they were to be held and not to become effective until she notified plaintiff of the advice of the attorney who was to advise her in the matter. That she promptly notified plaintiff that Mr. Wright had advised her not to go through with the deal and that she was rejecting the proposal.

In connection with her testimony it was stipulated by counsel that B. A. Myers represented defendant on and from February 11, 1947, and that he was her attorney at the time he wrote a letter on or about February 11, 1947, addressed to Mr. Steve Beard, attorney at law, Van Wert, Ohio, who is the attorney for plaintiff, the original of which is attached to the bill of exceptions and marked exhibit B.

The testimony of J. P. Bailey, a witness called on behalf of plaintiff, says in substance, that he is cashier of The Peoples Savings Bank, Van Wert, Ohio, and that the bank had a mortgage on the Della Robinson farm of 240 acres located in Liberty township, Van Wert county, Ohio. The principal sum of the mortgage is $21,000: interest as of date, $235.67. The mortgage, by its terms, may be paid at any time, and upon payment the mortgage would be released. The checks of plaintiff, marked exhibits E and F in the bill of exceptions, in the sum of $21,500 and $30,000, respectively, are each sufficient to satisfy the mortgage indebtedness and acceptable by the bank in payment of same.

Testimony of Eugene McNeill, now the judge of the Common Pleas Court of Van Wert county and prior to assuming his duties as common pleas judge, engaged in the practice of law, was called as a witness on behalf of plaintiff:

"I was associated with Mr. Wright to the extent that we had our offices together. I was acquainted with the defendant Della Robinson. I dictated the agreement, a copy of which is attached to the bill of exceptions, marked exhibit A, in the office shared by Kerns Wright and myself in the IOOF Building at Van Wert. That I, my office girl Velma Schaadt, Paul Good and Della Robinson were present at the time the instrument was prepared. The instrument was signed

by Mr. Good and Della Robinson in my presence. It is my impression that only two copies of the instrument were signed. At the time, there was a check written by Mr. Good for $100 which I saw. After the instruments were signed, one copy which was not signed was given to the office girl for the files. I believe Mr. Good took one copy and put it in his pocket. It is hard to say accurately at the time. After they were signed, maybe I better put it that way, after the contracts were signed, I left briefly on some other business. Mr. Good and Mrs. Robinson were talking. When I came back, Mr. Good's copy was gone, not in sight; Mrs. Robinson's copy was still lying on the corner of Mr. Wright's desk and the check there, both there at the time I came back.

"Mrs. Robinson asked if I would place the contract and check in the safe. I picked them up and gave them to the office girl, Velma Schaadt, with instructions to put them in Mr. Wright's safe.

"I was not in the office with Mrs. Robinson and Mr. Good during all the time they were together up to the time the papers were signed.

"They came into the office at approximately 1:30 and from 1:30 to about 3 o'clock preliminary matters in negotiation were going on between the parties and at that time I had an appointment at Mr. Beard's office on a settlement of a divorce case that we had, and I left, and I imagine it was approximately 3:30 when I came back. I left about 3 o'clock and returned about 3:30. When I left they were there and when I returned they were there. Then they were in my office and Mr. Good went into Mr. Wright's office and Mrs. Robinson and I went back to the library. We talked there a little bit and went up into Mr. Wright's office. During the conversation then before the deed was drawn up I left for about 5 or 6 minutes while assuming nego-

tiations were in progress. Then after the deed was drawn up and signed, I left again for about another 5 or 6 minutes and returned just at the time Mr. Good was leaving.''

In reply to a question ''Now did you hear any conversation concerning $500,'' he stated: ''To put it, there was some conversation. At the time after they had generally agreed upon the terms in here, there were certain other matters they were discussing. In the discussion of that they said that whatever they decided on that, they didn't want in the contract. I said anything they didn't want in the contract on that day, I didn't want to hear. That is when I left the first time. When I returned, they said they had made certain agreements. What all agreements were, I do not know. They did state to me that they had agreed on certain matters which were not expressed in the agreement, and what they are I do not know.

''When I returned Mr. Good was still there and prepared to leave, but one copy I could no longer see in existence.

''I went to the back office and came back and Mrs. Robinson was still there and she asked me if Mr. Good was returning. I said I didn't know; he didn't say anything to me. A little later she said that she would go on home and asked if I could put the check and her copy of the contract, have it put in Mr. Wright's safe. The check and contract were still lying on Mr. Wright's desk.

''I didn't hear her say anything about the contract not being final until she talked to Mr. Wright. '

''She said several times that she would like to discuss the agreement with Mr. Wright. She said that she would like to have, to await Mr. Wright's approval. I didn't see her have the contract in her hands after it was signed.

"I gave the contract and the check to Miss Schaadt at our office. Mrs. Robinson never came to me to get them. I never saw her get them.

"Nothing was said by Mrs. Robinson in my presence with reference to the signed instrument not being effective until after she had conferred with Mr. Wright."

Willis King, William R. Poling and Raymond E. Feigert, witnesses called on behalf of plaintiff, all testified on the question of damages by reason of delay in transfer of the real estate.

Except for the contention of defendant that no damages may be awarded because the contract sued upon is unenforcible, no question is raised as to the amount of the damages awarded, so it is unnecessary in our consideration of this case to discuss the evidence of these witnesses.

Testimony of Alice Good, wife of plaintiff, called as a witness on his behalf:

"Della Robinson called at the residence of Alice Good and her husband after the contract was signed and said 'Well, you just tell him (Mr. Good) I have changed by mind about that, and he'll know.' "

Testimony of Paul L. Good, plaintiff, in his own behalf:

"I identify checks marked plaintiff's exhibits E and F calling for a total of $51,500 and tender them to defendant. I also identify and tender to defendant $500 in one-dollar bills.

"The copy of the written contract entered into between him and defendant has been in his possession since August 16, 1946. I came into physical possession of same after both copies were signed, one of them being given to me and the other to Mrs. Robinson by Mr. McNeill. I wrote the check for $100 and gave it to Mrs. Robinson and it was attached to the contract.

"If the court should enter a decree awarding the premises to me I am willing to endorse the checks so they may be cashed by the defendant."

The $100 check was read in evidence.

In connection with his testimony, the following papers were offered and admitted in evidence: Plaintiff's exhibit A, which is the contract; plaintiff's exhibit B, a letter dated February 11, 1947, written by B. A. Myers to Mr. Beard; plaintiff's exhibit C, which is a letter written by Kerns Wright to Mr. Beard; plaintiff's exhibit D which is a copy of a letter addressed by Mr. Beard to Mr. Wright.

Plaintiff's exhibit B, referred to in the evidence, is in the words and figures following, to wit:

"February 11, 1947.

"Mr. Steve Beard,
"Attorney at law,
"Van Wert, Ohio.

Re: Paul Good v. Delia Robinson.

"My dear Mr. Beard:

"As attorney for Della Robinson, please advise Mr. Paul Good your client, that Della Robinson still insists that she had no contract or agreement with Mr. Good to sell him the 240-acre tract of ground, known as the Wellington N. Robinson home and that she will not make and execute a deed, conveying said tract to Mr. Good. She insists that before this alleged contract was to become binding, that she was to have a conference with Mr. Kerns Wright, who was acting as her attorney at that time and who was at Hamilton lake. She did confer with Mr. Wright and promptly thereafter refused to proceed further with the contract and in fact, never accepted the $100 check which was left in Mr. Wright's office.

"There were other conditions involved. The Probate Court did not approve and confirm her petition

to purchase, a reappraisement was ordered and considerable delay has intervened. She has been advised that land has depreciated in value since the alleged contract was made, but nevertheless, she stands upon her original claim that she did not agree to the contract to sell and does not expect to sell the farm at this time if a deed is made to her.

"Under the law, if you have a valid contract, in my opinion, you could not ask for specific performance, and if Mr. Good has any claim at all, it would be for damages and in my opinion, in view of the present conditions, he would not have a just claim for damages in any sum whatsoever.

"I am writing this letter in order that you might be fully advised of her position and further that Mr. Good might be advised that she will not deliver him a deed. If you have any inquiries in regard to this matter, kindly address them to the writer.

"Yours truly,
"B. A. Myers."

Plaintiff's exhibit C, referred to in the evidence, is in the words and figures following, to wit:

"February 10, 1947.

"Mr. S. S. Beard,
"Marsh Building,
"Van Wert, Ohio.

Re: Wellington N. Robinson
Estate.

"My dear Mr. Beard:

"In pursuance of a letter of B. A. Myers dated February 8th, we hand you herewith check of Paul Good in favor of Della Robinson dated April 16, 1946 for the sum of $100 drawn on the Peoples Savings Bank of Van Wert, Ohio.

"Very truly yours,
"Kerns Wright.

"KW-VES
"Enc.
"cc. B. A. Myers, Celina, Ohio."

Plaintiff's exhibit D, referred to in the evidence, is in the words and figures following, to wit:

"February 12, 1947.

"Mr. Kerns Wright,
"Attorney at law,
"Van Wert, Ohio.
"Dear Mr. Wright:

"This will acknowledge receipt of your letter of February 10, inclosing check issued by Paul Good in favor of Della Robinson, dated August 16, 1946, in the sum of one hundred dollars ($100) drawn on the Peoples Savings Bank, Van Wert, Ohio.

"Upon instruction of Mr. Good, I am returning the check. Will you please notify Mrs. Robinson that Mr. Good is ready, willing and able to carry out the terms of his contract with her.

"Yours very truly,

"_____

"Attorney at law.

"SSB:MEA
"Inc. check
"cc B. A. Myers, Celina, Ohio."

That is all the evidence offered, except plaintiff's exhibit A to the bill of exceptions, which is the same as plaintiff's exhibit A to the petition, hereinbefore set forth.

The defendant assigns error in the following particulars:

1. In overruling the motion of defendant for judgment, in refusing to render judgment, in favor of defendant, on the pleadings.

2. In overruling the motion of defendant to dismiss at the close of plaintiff's evidence.

3. The finding and judgment are manifestly against the weight of the evidence.

4. The finding and judgment below are contrary to law.

5. The finding and judgment below are not supported by sufficient evidence and are contrary to law.

These assignments will be considered in the order mentioned, the last three assignments being considered together.

Under the first assignment of error the defendant contends that as the pleadings show that at the time the agreement was entered into the plaintiff had a petition pending in the Probate Court, to take the premises described in the agreement, and in the petition in this case, together with a 40-acre tract of land in addition thereto, at their appraised value. The clause of the agreement quoted in the answer and the clause of the agreement immediately following the same, which reads as follows, "It is further agreed that should said court not approve said election that seller not be permitted to take said premises, that this contract shall be null and void and seller shall return to buyer the $100 paid hereunder," referred to her then pending election.

And defendant further contends that as the pleadings further show her then pending election was denied by the court, the agreement pursuant to the provisions of the quoted clauses became null and void, entitling defendant to judgment on the pleadings.

On the other hand, the plaintiff contends that the quoted clauses referred to any election to take the premises described in the agreement, at their appraised value, that might be made by the defendant and approved by the court, and consequently that the election to take the premises, filed after the date of

the agreement, and approved by the court, fully complied with the conditions set forth in the clauses, and the agreement did not become null and void and is enforcible.

An inspection of the above mentioned clauses discloses that no reference is made to a "pending" election, and that the election referred to in the first clause is "the election of seller to take the property herein described at its appraised value in the estate of Wellington N. Robinson, deceased."

The only premises described in the agreement are the premises described in the petition and such premises do not include the 40-acre tract included in the election of the defendant, pending in the Probate Court at the time the agreement was entered into.

While the definite article "the" in the first quoted clause above mentioned, appears before the word "election," it is used to qualify the phrase of which the word "election" is the first word, and to make definite the character of the election, that is, "election of seller to take the property herein described at its appraised value," and not to designate any particular election that has been or may be made by the seller to take the property at its appraised value.

By the terms of the first quoted clause the contract is contingent upon the Probate Court of Van Wert county, approving the election of seller to take the property described in the agreement at its appraised value, and there being no other or further limitation prescribed as to the character of the election, it comprehends any election of the seller to take the property at its appraised value, irrespective of any election by her to take any other property, or of the time of the appraisal, or of the time such election is made.

The words "said election" appearing in the second

clause above quoted refer back to the word "election" as used in the first clause, and with the meaning hereinbefore set forth.

Those clauses of the agreement are not in any way ambiguous and clearly contemplate that the contract is contingent upon the Probate Court approving any election of the seller to take the property described in the agreement, at its appraised value, and if the Probate Court does not approve any such election, that the contract shall be null and void and seller shall return to buyer the $100 paid thereunder.

It is only in cases where a contract is ambiguous that resort may be had to evidence of the situation of the parties and conditions existing at the time the contract is entered into, as an aid in construing the contract.

As the contract was not ambiguous in the respects mentioned, the existence of facts showing the situation of the parties and the existence of conditions existing at the time it was entered into, including the fact that defendant then had an election pending in Probate Court to take the real estate and other real estate, may not be considered by the court in construing the same.

Although the election of the seller, pending at the time the agreement was signed, was denied by the court, such denial did not render the agreement null and void as the defendant subsequently made an election in conformity with the terms of the agreement, which was approved by the court, and thus the thing occurred upon which the validity of the contract was dependent, and the agreement did not become null and void.

For the reasons mentioned, this assignment of error is without merit.

2. In addition to the issue as to whether the written agreement by its terms became null and void by rea-

son of defendant's election to take the real estate, pending in Probate Court at the time the agreement was signed, being denied by the court, which we have discussed, the following issues were treated by all the parties and by the trial court as being raised by the pleadings in the case.

1. Whether plaintiff's check, payable to the order of defendant, for the sum of $100, being the amount of the down payment specified in the written agreement, was delivered to the defendant.

2. Whether the duplicate copy of the written agreement was delivered to the plaintiff.

3. Whether the parties had orally agreed that the written agreement would not take effect or become binding upon them until the $500 orally agreed by the parties to be paid by plaintiff to defendant as an inducement to her to sign the agreement, had been paid or tendered in conformity with the terms of the oral agreement.

4. Whether the parties had orally agreed that the written agreement was to become effective and binding upon them only in event the oral and written agreements of the parties were approved by Kerns Wright, defendant's attorney.

The last mentioned issue is not clearly raised by the pleadings, but was submitted to and tried by the Common Pleas Court without objection by either of the parties, as if properly raised by the pleadings, and the findings of fact of the trial court are predicated upon such issue being properly raised by the pleadings.

That the plaintiff adopted this construction of the pleadings is obvious from the fact that all the testimony introduced upon this issue, is the testimony of defendant elicited upon her cross-examination by plaintiff.

While the letter of defendant's attorney to plaintiff's attorney, identified as exhibit B attached to the bill of exceptions, might be construed as limiting to some extent the defenses available to defendant, such construction cannot be adopted in this case, as the plaintiff himself, upon cross-examination of the defendant, elicited the facts in support of each and all of such defenses and thereby waived any right to insist upon such construction.

In reviewing the record on this assignment of error we will, therefore, have to consider the evidence adduced upon such defense as if the same were properly pleaded and not restricted.

This is a chancery case.

On the motion of the defendant for a nonsuit of plaintiff and dismissal of plaintiff's petition, made at the close of the evidence adduced by the plaintiff, in a chancery case such as this it is the duty of the court to first determine whether there is evidence tending to prove each element of the case essential to a recovery by plaintiff, and if he finds there is no evidence tending to prove any essential element of the case, to sustain the motion for nonsuit and dismissal; and, second, if he finds there is evidence to prove each element essential to a recovery by the plaintiff, to weigh the evidence in the case and then determine whether a recovery by the plaintiff is sustained by a preponderance of the evidence on each essential element, and if he determines it is not sustained by a preponderance of the evidence on each essential element, to sustain the motion for dismissal.

As shown by the record in this case the plaintiff testified that a duplicate of the written agreement was delivered to him by the scrivener, who was his agent.

On the other hand, the defendant, on her cross-examination by plaintiff, testified that the parties made

certain oral agreements not appearing in the written instrument, first, to the effect that the contract was not to become effective or binding upon the parties until the plaintiff paid defendant $500 as an inducement to enter into the written agreement, and that this amount was to be paid on the day the written agreement was signed; and, second, that the contract was not to become effective and binding upon the parties until the written and oral agreements had been approved by her attorney.

She further testified that neither of these conditions had been complied with, and that a duplicate copy of the agreement had not been delivered either by her or the scrivener to the plaintiff.

The defendant's testimony is corroborated to some extent by the testimony of the scrivener to the effect that both the plaintiff and defendant informed him they had made certain oral agreements with reference to the subject matter of the contract, which were not to be incorporated in the written agreement, and of the nature of which he is not aware, and that he did not deliver a duplicate copy of the written agreement to plaintiff.

While evidence of the delivery by a party or his agent of a duplicate of an agreement of the character mentioned, to the other party to the agreement, in the absence of evidence to the contrary, tends to prove it was intended to take effect upon such delivery, the evidence of defendant, elicited upon her cross-examination by plaintiff, tends to prove that by oral agreement between the parties to the written agreement, conditions were annexed to the formation of the alleged contract and to the obligations upon the promises therein of such character that the written agreement would not become effective even if a duplicate of same was delivered by her or her agent to the plaintiff.

Although testifying at the trial, the plaintiff did not deny the testimony of defendant in the respects mentioned, except as to the delivery of the duplicate of the contract to him by the scrivener, and no evidence was introduced in the case proving or tending to prove that the testimony of defendant in the respects mentioned, other than as to the delivery of duplicate copy of the contract to plaintiff, was not true.

The testimony of the defendant in the respects mentioned tended to prove two separate conditions precedent to the formation of the written contract upon which the action is based.

As is said in 9 Ohio Jurisprudence, 464, Contracts, Section 229:

"* * *Conditions may be annexed to the formation of a contract or to the obligations upon promises therein. In other words, the contract may not come into existence until the happening of some event or the performance of some act. There may be no actionable liability to perform a certain promise contained in the contract until the occurrence of some event or the performance of some act. A condition going to the existence of a contract may be contained in the offer or the acceptance.''

To the same effect, is the opinion in the case of *Mumaw* v. *Western & Southern Life Ins. Co.*, 97 Ohio St., 1, at page 9, 119 N. E., 132, and the decision in the case of *Dependabilt Homes, Inc.*, v. *Haettel*, 81 Ohio App., 422, 76 N. E. (2d), 616.

Directly in point as to an oral agreement between the parties to a written instrument, that the same is not to become effective until it is approved by counsel of one of the parties is a condition predecent to the taking effect of the written instrument, is the case of *Ware* v. *Allen*, 128 U. S., 590, 32 L. Ed., 563, 9 S. Ct., 174, wherein it is held that where, before the signing

of a written instrument, it was agreed between the parties thereto that it was to be of no effect unless, upon consultation with the counsel named, the defendant should be assured that the transaction out of which it arose was lawful, proof that they were advised by such counsel that such transaction was illegal shows that the instrument never came into effect and that the conditions upon which it was to become operative never occurred.

The testimony of the defendant, in the respects mentioned, not being denied by plaintiff, and there being no evidence of any kind to contradict it, must be presumed to be true. In support of this proposition we quote from the opinion in the case of *Hayes* v. *Kentucky Joint Stock Land Bank,* 125 Ohio St., 359, at page 362, 181 N. E., 542:

"No other person testified to the contrary * * *. Her positive statement is not contradicted by any other witness, or by any other circumstance. Standing uncontradicted, it must be accepted as proof, in the absence of any testimony or circumstance from which a contrary inference can be drawn. The record discloses none."

The above quotation refers to the testimony of the defendant in the case who had filed a petition praying for the vacation of a default judgment rendered against her in the cause, upon the ground that she had not been served with summons in the case although the return of the summons issued for her showed service was made upon her by leaving an attested copy thereof at her usual place of residence, the defendant contending and testifying that the place where the copy of the summons was left for her was not her usual place of residence.

The Common Pleas Court entered judgment on her petition to vacate, finding the service of summons to

be valid. The petitioner then prosecuted error to the Court of Appeals which affirmed the judgment of the Common Pleas Court, and error was then prosecuted by the petitioner, to the Supreme Court. The Supreme Court, basing its decision on the above quoted reasoning, reversed the judgment of the Court of Appeals and entered final judgment vacating the judgment against the petitioner.

That the uncontradicted testimony of a party, elicited by cross-examination by the adverse party, is effective for the purpose mentioned in the opinion in the case of *Hayes* v. *Kentucky Joint Stock Land Bank, supra,* appears from the decision in the case of *Zarn, Admx.,* v. *Dominique,* 39 Ohio App., 442, 177 N. E., 850, wherein, in the second paragraph of the syllabus, it is held:

"On a motion by defendant at the close of plaintiff's evidence for a directed verdict, the uncontradicted testimony of a defendant called by plaintiff for cross-examination must be deemed true."

Applying the same reasoning to the testimony of the defendant in the instant case as to the parties to the written contract agreeing that it was not to become effective, operative or binding upon the parties unless and until the $500 orally agreed to be paid her as an inducement to sign the written contract, was paid on the day the written contract was signed, and that the written contract would not become effective until the oral and written agreements of the parties had been approved by defendant's attorney, and that such conditions precedent had not happened, such testimony must be presumed to be true, there being no testimony to the contrary.

This testimony therefore established two complete defenses to the enforcement of the written agreement,

neither of the conditions precedent to its taking effect and becoming operative having been complied with. Such defenses having been established by the uncontroverted testimony of the defendant, the court erred in not granting defendant's motion made at the close of plaintiff's evidence, for nonsuit and dismissal of this case.

In view of our holding on this assignment of error, it is unnecessary to consider assignments of error Nos. 3, 4 and 5.

For the error mentioned, the judgment of the Common Pleas Court will be reversed and this court rendering the judgment the Common Pleas Court should have rendered on the motion, will render and enter final judgment dismissing plaintiff's petition at his costs. It is further adjudged that plaintiff pay the costs of this appeal.

*Judgment accordingly.*

JACKSON and MIDDLETON, JJ., concur.